test is notably different than ... [the] single employer test").

The single employer doctrine does not apply here, because when Holdings completed its asset purchase from the Post Company and began to operate the paper as its owner, Acquisition's managerial role on behalf of the Post Company ended. *See NLRB v. Hospital San Rafael, Inc.*, 42 F.3d 45, 50 (1st Cir.1994) (describing single employer doctrine as applying primarily "in the case of two ongoing businesses which the NLRB wishes to treat as a single employer on the ground that they are owned and operated as a single unit").

## CONCLUSION

For the foregoing reasons, we affirm the decision of the NLRB.

**Angel SELLAN, Petitioner–Appellant,**

v.

**Robert KUHLMAN, Respondent– Appellee.**

**No. 99–2632.**

United States Court of Appeals, Second Circuit.

Argued May 17, 2001.

Decided Aug. 14, 2001.

Polly N. Passonneau, New York, NY, for Petitioner–Appellant.

Donna Aldea, Assistant District Attorney (Richard A. Brown, District Attorney, Queens County, John M. Castellano, Assistant District Attorney, on the brief), Kew Gardens, NY, for Respondent–Appellee.

Before: WALKER, Chief Judge, FEINBERG and CABRANES, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge:

Angel Sellan appeals from a September 27, 1999 judgment of the United States District Court for the Eastern District of New York (David G. Trager, *District Judge*), denying his petition for a writ of habeas corpus. He argues primarily that he was denied his Sixth Amendment right to effective assistance of counsel when his appellate counsel failed to raise a potentially meritorious issue of New York State law on direct appeal before the New York Appellate Division. Sellan contends that his counsel should have argued on direct appeal that he was entitled to a new trial under *People v. Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987), because the trial court failed to charge the jury that it could not simultaneously convict him of two counts with assertedly inconsistent mental states. We affirm the district court's dismissal of Sellan's habeas petition because we are unable to conclude that the New York Appellate Division unreasonably applied clearly established federal law in rejecting his claim of ineffective assistance of appellate counsel.

## BACKGROUND

This case arises out of a shooting incident that occurred on May 27, 1985, in which John Mullaney, Mario Arce and George Molina were shot on the boardwalk at Rockaway Beach, Queens. Three or four shots were fired. Mullaney and Arce were injured and Molina was killed. Following a jury trial in Queens County Supreme Court, Sellan was convicted of Murder in the Second Degree (so-called "depraved mind" murder), Manslaughter in the First Degree (a lesser included offense of second degree intentional murder, which requires intent to cause serious physical injury resulting in death), two counts of Assault in the First Degree, Reckless Endangerment in the First De-

gree, and Criminal Possession of a Weapon in the Second Degree, pursuant to N.Y. Penal Law §§ 125.25[2], 125.20, 120.10, 120.25, and 265.03, respectively. Rafael Morato, a friend of Sellan, testified at trial that he heard several shots, and then, within minutes of the shooting, saw Sellan on the boardwalk holding a pistol. The police subsequently went to Sellan's home, obtained permission from his aunt to search his bedroom, and found a .22 caliber pistol and particles of sand in a bag. A ballistics expert testified at trial that the fatal shot had been fired from that .22 caliber pistol. Sellan was sentenced principally to an indeterminate incarceration term of twenty-five years to life for his second degree murder conviction, a concurrent term of eight and one-third years to twenty-five years for the first degree manslaughter conviction, and concurrent shorter terms for the other convictions.

On direct appeal, Sellan's appellate counsel raised two arguments: (1) the prosecutor improperly cross-examined him with regard to evidence of Sellan's gang membership, and (2) the prosecutor improperly attempted to refresh the defendant's recollection of a prior bad act. Sellan's appellate counsel, however, did not raise an issue on direct appeal that had

been properly preserved at trial:[1] whether the trial court erred when it failed to charge murder in the second degree and first degree manslaughter in the alternative because the mental state elements were mutually exclusive.[2] The Appellate Division affirmed Sellan's conviction, *see People v. Sellan*, 533 N.Y.S.2d 109, 143 A.D.2d 690 (1988), and leave to appeal to the Court of Appeals was denied. *See People v. Sellan*, 73 N.Y.2d 860, 537 N.Y.S.2d 506, 534 N.E.2d 344 (1988).

On the theory that appellate counsel should have raised this argument, Sellan sought a writ of coram nobis in state court on the basis of ineffective assistance of counsel. He argued that the manslaughter charge required the jury to find that he intended to cause serious physical injury to his victim, while the murder charge required a finding that he acted with an extreme state of recklessness in causing that same victim's death. Sellan cited a then-recent New York Court of Appeals decision, *People v. Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987), for this proposition. In *Gallagher*, the Court of Appeals vacated a defendant's conviction and ordered a new trial, holding that he could not be convicted of both

---

1. Trial counsel took exception to the charge by requesting that "if the jury finds the defendant guilty of intentional murder, they cannot go on to depraved murder. And I would also—just that as to murder in the second degree, you cannot be convicted of both murders, of depraved and intentional. Because if you are depraved, you cannot intend...." Thus, trial counsel put the court on notice of a potential inconsistency in the mental states. After the verdict was rendered, trial counsel stated more specifically, "I believe that this verdict is repugnant and inconsistent with the evidence in that this jury had found that this defendant has committed an intentional act, that of manslaughter in the 1st degree, and also as to the same deceased, also found him guilty of murder in the 2nd degree which is a

depraved indifference which does not require an intentional act."

2. Under N.Y. Penal L. § 125.25[2]:
 A person is guilty of murder in the second degree when: ...
 [2] Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. Under N.Y. Penal L. § 125.20:
 A person is guilty of manslaughter in the first degree when:
 1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person ...

intentional murder and reckless manslaughter for the same act "because guilt of one necessarily negates guilt of the other." *Gallagher*, 69 N.Y.2d at 529, 516 N.Y.S.2d 174, 508 N.E.2d 909. The Second Department of the Appellate Division summarily denied Sellan's application in a Decision and Order stating:

> Motion by defendant for a *writ of coram nobis* to vacate an order of this court dated October 3, 1988, which affirmed a judgment of the Supreme Court, Queens County, rendered March 16, 1987, on ground of ineffective assistance of appellate counsel. (*People v. Bachert*, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318.)
>
> Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is
>
> ORDERED that the motion is denied.

*People v. Sellan*, No. 9152 (N.Y.App. Div.2d Dep't Jan. 25, 1990). Leave to appeal to the Court of Appeals was denied. *See People v. Sellan*, 75 N.Y.2d 924, 555 N.Y.S.2d 43, 554 N.E.2d 80 (1990), and a second application for leave to appeal was denied on the basis that the Second Department's order denying his writ of coram nobis was not appealable. *See People v. Sellan*, 76 N.Y.2d 944, 563 N.Y.S.2d 73, 564 N.E.2d 683 (1990). On March 26, 1993, the Queens County Supreme Court denied, as both procedurally barred and meritless, Sellan's *pro se* motion to vacate the judgment under N.Y. C.P.L. § 440.10, and upon reargument adhered to its decision.

Subsequently, Sellan raised his ineffective assistance of counsel claim in a habeas corpus petition in federal district court. His petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, which mandates deference to state court decisions. *See* 28 U.S.C. § 2254(d). On September 27, 1999, the district court denied Sellan's petition for a writ of habeas corpus. The district court held that appellate counsel's failure to raise a potentially meritorious state law claim on direct appeal did not give rise to a violation of "clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d)(1). Having denied Sellan's petition on this ground, the district court concluded that it was not required to decide whether the Appellate Division's decision constituted an "adjudication on the merits" warranting application of AEDPA's higher level of deference to state court decisions, or whether the pre-AEDPA *de novo* standard of review applied.

■ Petitioner now appeals. We review *de novo* a district court judgment denying habeas corpus. *See Chalmers v. Mitchell*, 73 F.3d 1262, 1266 (2d Cir.1996).

## DISCUSSION

This appeal requires us to construe and apply § 2254(d)(1), enacted in 1996 as part of AEDPA, which establishes standards for federal habeas review of state court decisions. The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

28 U.S.C. § 2254(d)(1).

Several threshold questions regarding the proper interpretation and application of § 2254(d)(1) must be addressed at the

outset. First, we must decide whether Sellan's claim for ineffective assistance of counsel meets § 2254(d)(1)'s requirement that the claim be based upon "clearly established Federal law" as determined by the Supreme Court. If not, we need go no further. If, however, petitioner's claim is based on "clearly established" law, then we must proceed to answer the question we left open in *Washington v. Schriver,* 255 F.3d 45 (2d Cir.2001): what level of deference does this court owe to a state court's summary decision denying a petitioner's federal claim in the absence of any reference to, or discussion of, federal law.

### I. *Clearly Established Federal Law*

■ As noted, we must determine as an initial matter whether Sellan's ineffective assistance of counsel claim was based on federal law "clearly established" by the Supreme Court. The district court held that such was not the case because the particular theory of ineffective assistance of counsel pressed by Sellan—namely, that his attorney failed to raise an arguably meritorious state law argument on direct appeal—has not been adopted by the Supreme Court as a basis for making out a successful Sixth Amendment ineffective assistance claim. *See Sellan v. Kuhlman,* 63 F.Supp.2d 262, 272 (E.D.N.Y.1999) ("[A]t the time the alleged errors were made by state courts, there was no 'clearly established' federal rule that counsel could be found ineffective under the United States Constitution for failing to raise an issue of state law on direct appeal."). We disagree.

In some circumstances, the question of precisely what law must be "clearly established" for AEDPA purposes may prove to be a complex one. *Cf. Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 254 (2d Cir.2001) (describing the "recurring difficulty" of determining whether a federal right is "clearly established" for qualified immunity purposes). No such complexity exists here. In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), a post-AEDPA ineffective assistance of counsel case decided after the district court filed its opinion, the Supreme Court concluded: "It is past question that the rule set forth in *Strickland [v. Washington* ] qualifies as clearly established law, as determined by the Supreme Court of the United States." *Id.* at 391, 120 S.Ct. 1495 (Stevens, *J.,* for the Court, Part III) (internal quotation marks omitted). The *Williams* Court thus clarified that for AEDPA purposes, it matters only that the *Strickland* performance and prejudice test has been "clearly established"—not that a particular theory of ineffective assistance derived from *Strickland* has been clearly established. Any case-specific concerns "obviate neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by this Court." *Id.*

■ Following the lead of the *Williams* Court, we hold that a Sixth Amendment ineffective assistance of counsel claim necessarily invokes federal law that has been "clearly established" by the Supreme Court within the meaning of AEDPA. To determine whether Sellan is entitled to habeas relief on the basis of his Sixth Amendment claim, we consider the standard of deference that is applicable here.

### II. *Standard of Deference*

Because the *Strickland* standard satisfies the "clearly established Federal law" requirement of § 2254(d)(1), we must decide whether the New York Appellate Division's denial of Sellan's coram nobis petition constituted an "adjudicat[ion] on the merits" under § 2254(d), absent any discussion of or explicit reference to Sellan's federal claim. If so, we are required to

apply the deference mandated under AEDPA to Sellan's claim.

In *Washington v. Schriver* we discussed, but did not decide, whether a state court decision that fails to discuss or refer to the merits of a petitioner's federal claim or its basis in federal law constitutes an "adjudication on the merits" triggering the "unreasonable application" test set forth in § 2254(d)(1).[3] In that case, Washington argued that his federal constitutional claim was not "adjudicated on the merits" because "the state courts neither cited nor applied federal law, no[r] relied upon precedents which in turn cited or applied federal law." *Washington*, 255 F.3d at 52. After acknowledging conflicting interpretations of "adjudicated on the merits" among the Circuits, we found it unnecessary to decide the question because Washington's petition lacked merit under either the AEDPA "unreasonable application" test or pre-AEDPA *de novo* review. *See id.* at 55. *See also Leka v. Portuondo,* 257 F.3d 89, 96–97 (2d Cir.2001) (finding it unnecessary to decide which level of deference to apply, because even under AEDPA deference, the state court decision rejecting Leka's constitutional claim was unreasonable).

But this is not a case like *Washington* or *Leka.* Sellan's Sixth Amendment claim is a forceful one—the state law argument that Sellan's counsel failed to raise on direct appeal is quite strong, *see post,* Part III, and we have held that failure by a state prisoner's attorney to raise a "particularly strong" state law claim on direct appeal may constitute ineffective assistance of counsel. *See Mayo v. Henderson,* 13 F.3d

528, 530–34 (2d Cir.1994) (holding on habeas that petitioner was denied effective assistance of counsel when appellate counsel failed to raise a *Rosario* claim that would require *per se* reversal under prevailing New York case law). Accordingly, were we to review Sellan's Sixth Amendment claim *de novo,* we might well be inclined to grant the writ.

■ By contrast, were we to review the relevant state court decision under the deferential standards now prescribed by AEDPA, it is plain that Sellan would not be entitled to the writ. Indeed, as discussed below, *see post* Part III, the Sixth Amendment does not require that *all* colorable state law arguments be raised on direct appeal. *See Jameson v. Coughlin,* 22 F.3d 427, 428 (2d Cir.1994) (holding that counsel made a "reasonable, strategic" decision not to raise an argument based upon state law before the New York Appellate Division); *but see Mayo,* 13 F.3d at 530–34 (finding ineffective assistance of counsel when appellate counsel failed to raise a *Rosario* claim that would require *per se* reversal under prevailing New York case law). Under the circumstances of Sellan's case, the state court did not "unreasonably apply" relevant federal law when it held that appellate counsel's failure to raise the *Gallagher* issue did not amount to a Sixth Amendment violation.

In short, whether AEDPA deference applies here is all but outcome-determinative. To decide whether we must apply AEDPA deference, we must reach and resolve the question left open in *Washington* and

---

**3.** We note that a prior decision of this court applied the "unreasonable application" test of § 2254(d)(1) to a state court decision that failed to mention or reference federal law. *See Lindstadt v. Keane,* 239 F.3d 191 (2d Cir. 2001). However, the issue of whether AEDPA deference should be applied under the circumstances was not presented to the court.

Nor was the resolution of this question necessary to the court's disposition of the case, as the errors at trial were serious enough to warrant granting the writ even under AEDPA's deferential standard. Therefore, it was appropriate for the *Washington v. Schriver* court to treat the issue as unresolved in this circuit.

*Leka*—namely, whether a state court decision as to a particular federal claim can constitute an "adjudication on the merits" within the meaning of AEDPA even when the state court does not explicitly refer to the federal claim or to relevant federal case law.

The district court agreed with our conclusion that the level of deference would determine the outcome, albeit with a slightly different emphasis:

> [U]nder the old standard of habeas review, it may fairly be concluded that petitioner's appellate counsel's performance was inadequate. Whether the Second Department's denial of petitioner's application for a writ of error coram nobis, based on appellate counsel's failure to raise the issue of inconsistent verdicts, was 'unreasonable' under AEDPA's new standard of review presents a much closer question.

Because we conclude that the law was "clearly established" and because we, like the district court, cannot conclude that the outcome would be the same with or without AEDPA deference, we must consider whether AEDPA's "unreasonable application" test applies.[4]

Section 2254(d)(1)'s "unreasonable application" test is triggered when a federal claim has been "adjudicated on the merits" in state court. Thus, the application of § 2254(d)(1) turns on the meaning of "adjudicated on the merits"—more specifically, on whether a federal claim is "adjudicated on the merits" when the state court decision that disposes of it neither discusses the claim nor references federal law.

▇ We begin with the statutory text. When Congress uses a term of art such as "adjudicated on the merits," we presume that it speaks consistently with the commonly understood meaning of this term. *See Walters v. Metropolitan Ed. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). "Adjudicated on the merits" has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground. *See e.g., Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 1025, 149 L.Ed.2d 32 (2001) (noting one definition of an "on the merits" adjudication as "one that actually passes directly on the substance of a particular claim before the court") (internal quotation marks and alterations omitted). *See also, e.g., Black's Law Dictionary* 42 (7th ed.1999) (adjudication: "1. The legal process of resolving a dispute; the process of judicially deciding a case. 2. Judgment."; adjudicate: "1. To rule upon judicially. 2. Adjudge."); *Webster's Third New Int'l Dictionary* 27 (1993) (adjudicate: "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised; enter on the records of a court (a final judgment, order, or decree of sentence)").

Nothing in the phrase "adjudicated on the merits" requires the state court to have explained its reasoning process. Nowhere does the statute make reference to the state court's process of reasoning. *See Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir.1999). As the Fourth Circuit has explained, when a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state

---

**4.** Sellan does not argue that a pre-AEDPA *de novo* level of deference applies. Rather, he assumes that the AEDPA "unreasonable application" test applies, and maintains that the Appellate Division's decision was an unreasonable application of Supreme Court precedent.

court's ultimate decision was an "unreasonable application" of clearly established Supreme Court precedent. *See Bell v. Jarvis,* 236 F.3d 149 (4th Cir.2000), *petition for cert. filed* (U.S. Mar. 29, 2001).

█ In sum, the plain meaning of § 2254(d)(1) dictates our holding: For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

We recognize that a state court's explanation of the reasoning underlying its decision would ease our burden in applying the "unreasonable application" or "contrary to" tests. *See Aycox,* 196 F.3d at 1178 n. 3 (noting that the "state court's explanation of its reasoning would avoid the risk that we might misconstrue the basis for the determination, and consequently diminish the risk that we might conclude the action unreasonable at law or under the facts at hand...."); *Bell,* 236 F.3d at 159. However, the absence of an explanation does not absolve us from performing the same task. In the absence of an explicit statement in the text that Congress intended the presence or absence of reasoning to determine which standard of deference to apply, we have no warrant to ignore a clear Congressional mandate. *Cf. Cruz v. Miller,* 255 F.3d 77, 86 (2d Cir.2001) ("[W]e are determining the reasonableness of the state courts' 'decision,' 28 U.S.C. § 2254(d)(1), not grading their papers.").

█ Our conclusion is fully consistent with the teaching that federal habeas courts should be wary of "impos[ing] on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim." *Coleman v. Thompson,* 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim...."). "If we were to ... infer that an unconscionable breakdown occurred herein because the Appellate Division issued a summary affirmance rather than a written opinion, not only would this reflect doubt regarding the capabilities of the New York courts as fair and competent forums for the adjudication of federal constitutional rights, but this would also place us in the position of dictating to state courts that they must issue opinions explicitly addressing the issues presented or else face 'second guessing' by the federal courts. The Supreme Court has pointedly instructed us that 'we have no power to tell state courts how they must write their opinions.' " *Capellan v. Riley,* 975 F.2d 67, 72 (2d Cir.1992) (citing *Coleman,* 501 U.S. at 739, 111 S.Ct. 2546).

Our conclusion is consistent not only with the plain meaning of AEDPA, but also with the position taken by a number of our sister Circuits. *See Bell,* 236 F.3d at 158–59 (4th Cir.) (en banc); *Neal v. Puckett,* 239 F.3d 683, 686, 696 (5th Cir. 2001) (defining "adjudication on the merits" to be a substantive, rather than a procedural, decision); *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.1997) (Posner, *C.J.*) (recognizing that to condition "reasonableness" or "unreasonableness" on the quality of a state court's reasoning, rather than its result "would place the federal court in just the kind of tutelary relation

to the state courts that the recent amendments are designed to end."), *cert. denied,* 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997); *Aycox,* 196 F.3d at 1178 (10th Cir.) (holding that an "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim; and that a federal court must apply AEDPA deference to the result of a state court decision, even if the reasoning is not expressly stated). *Cf. Mercadel v. Cain,* 179 F.3d 271 (5th Cir.1999) (holding that a one-word denial of a federal claim in state court was procedural, and not on the merits, and therefore declining to apply AEDPA deference).[5]

In his concurring opinion in *Washington v. Schriver,* Judge Calabresi urged this Circuit to adopt the rule that "the pre-AEDPA standard of review should indeed be applied in cases like this one—cases, that is, in which State courts have·rejected a petitioner's federal constitutional claim without specifically addressing it (even if only by citing to federal case law or to State court decisions that apply federal law)." *Washington,* 255 F.3d at 62 (Calabresi, *J.,* concurring). Rather than justifying this proposed rule on the basis that

well articulated reasoning avoids the risk that federal courts will misconstrue the basis for a decision, or that it would ease our burden, he argues that denying AEDPA deference to summary decisions on federal claims is actually advantageous to "extremely busy state court judges." By deciding not to address federal questions presented to them, state courts could simply assign this difficult burden to the federal courts, secure in the knowledge that federal courts, with their greater expertise, would address the federal questions *de novo. See id.* at 62. We are not persuaded.

■ Judge Calabresi's interpretation of § 2254(d)(1)'s "adjudicated on the merits" requirement, which does not purport to rest on any textual basis, could lead to deleterious substantive consequences. A rule that would apply AEDPA deference only when a state court articulates its reasoning or cites federal law could encourage state prisoners to press their federal claims in state court in an essentially cursory manner—just enough to exhaust state remedies and to avoid default or waiver, but not too strongly—with the hope that

---

5. Only the Third Circuit has charted a different course. That Circuit distinguishes the level of deference federal courts must apply according to whether a state court has discussed the federal claim. *See Hameen v. Delaware,* 212 F.3d 226, 248 (3d Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1365, 149 L.Ed.2d 293 (2001) ("[N]otwithstanding the Delaware court's reliance upon [the correct Supreme Court precedent], we are satisfied that it did not pass on Ferguson's Eighth Amendment constitutional duplicative aggravating circumstances argument, even though it had the opportunity to do so. Accordingly, we cannot say that the Delaware Supreme Court took into account controlling Supreme Court decisions.... Hence we exercise pre-AEDPA independent judgment on the duplicative aggravating circumstances claim.").

In the Sixth Circuit, there remains some unacknowledged tension between panel opinions. *Compare Doan v. Brigano,* 237 F.3d 722, 730–31 (6th Cir.2001) (holding that an "unreasonable application" analysis cannot be performed on a state court decision that fails to identify a state prisoner's federal claim because the state court did not "correctly identify the governing legal principle only to unreasonably apply that principle to the particular facts of the case at hand;" but recognizing that the "contrary to" clause can be applied to the state court's decision, even absent mention of the federal claim) *with Harris v. Stovall,* 212 F.3d 940, 943 n. 1 (6th Cir.2000) (holding that where "a state court decides a constitutional issue by form order or without extended discussion, a habeas court should ... focus on the result of the state court's decision," and perform an "unreasonable application" analysis), *cert. denied,* —— U.S. ——, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001).

the state court will not "refer to" or engage in any lengthy discussion of their federal claims, thus entitling the prisoner to *de novo* consideration of these claims on federal habeas review. Such a rule would have the practical effect of shunting serious arguments as to state claims to state court, and serious arguments as to federal claims to federal court, and would thus be at odds with the animating spirit of AEDPA which respects the state court's adjudication of *all* claims. *See, e.g.,* 142 Cong. Rec. S3446–02, 3447 (1996) (Statement of Sen. Hatch) ("[AEDPA deference] simply ends the improper review of State court decisions. After all, State courts are required to uphold the Constitution and to faithfully apply Federal laws."). The notion that state courts may absolve themselves of their duty to decide federal questions has no basis in the law. Under the Supremacy Clause, state courts are obligated to apply and adjudicate federal claims fairly presented to them. *See* U.S. Const. art. VI cl. 2; *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Finally, Judge Calabresi's position is at odds with much of the Supreme Court's habeas jurisprudence, *see, e.g., Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (describing the exhaustion of state remedies doctrine as, *inter alia,* "designed ... to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (internal quotation marks omitted).

■ We adopt the Fifth Circuit's succinct articulation of the analytic steps that a federal habeas court should follow in determining whether a federal claim has

been adjudicated "on the merits" by a state court. As the Fifth Circuit has explained, "[W]e determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Mercadel v. Cain,* 179 F.3d 271, 274 (5th Cir.1999).

■ Applying this test, there can be no doubt that Sellan's claim of ineffective assistance of counsel was adjudicated on the merits by the Second Department. Although it denied Sellan's motion for a writ of coram nobis without referring explicitly to the Sixth Amendment or relevant federal case law, the Appellate Division indicated that Sellan's "ineffective assistance of counsel claim" was "denied." There is no basis for believing that the Appellate Division rejected the claim on non-substantive grounds. Accordingly, we conclude that the Appellate Division's adjudication was "on the merits," and that we must therefore review that court's decision to deny Sellan's Sixth Amendment claim under the deferential standards prescribed in 28 U.S.C. § 2254(d)(1). We now turn to that inquiry.

### III. *Applying the "Unreasonable Application" Test*

■ We now address whether the Appellate Division unreasonably applied *Strickland* to the facts of Sellan's case.[6]

---

**6.** To be sure, under AEDPA, a writ of habeas corpus may also issue if the relevant state court decision was based on law that is "diametrically different" from clearly established federal law as determined by the Supreme

Court. *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. Similarly, under AEDPA a writ may issue if the relevant state court "confronts a set of facts that are materially indistinguishable from a decision of th[e] [Su-

At the outset, we observe that the constitutional right to effective assistance of counsel extends to appellate counsel. *See Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

 To show that his appellate counsel's representation was ineffective under *Strickland,* Sellan must establish that (1) the attorney's representation fell below an objective standard of reasonableness; and (2) the deficient representation prejudiced the defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Under § 2254(d)(1), we must determine not whether the state court was incorrect or erroneous in rejecting Sellan's ineffective assistance claim, but whether it was "objectively unreasonable" in doing so. *See Williams,* 529 U.S. at 409, 120 S.Ct. 1495 (O'Connor, *J.,* for the Court, Part II). For an application to be "objectively unreasonable," we have held that "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks and citations omitted). We hold that the Appellate Division did not unreasonably apply the *Strickland* standard here.

 Appellate counsel's performance must be assessed "on the basis of the facts of the particular case 'viewed as of the time of counsel's conduct'" without the benefit of hindsight. *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). An attorney is not required to "forecast changes or advances in the law."

*Jameson v. Coughlin,* 22 F.3d at 429; *see also Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (holding that challenges to appellate counsel's effectiveness are viewed in light of the law existing at the time counsel was required to file the brief on appeal).

Appellate counsel filed her brief on Sellan's behalf in February of 1988. In 1987, the New York Court of Appeals had held that "Where a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative." *People v. Gallagher,* 69 N.Y.2d 525, 528, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987) (reversing the defendant's conviction and ordering a new trial where the defendant was convicted simultaneously of intentional murder, N.Y. Penal L. § 125.25[1], and reckless manslaughter in the second degree, N.Y. Penal L. § 125.15[1], a lesser included offense of depraved mind murder). "Where there is but one shooting and one death, it follows that allowing two convictions ... allows the jury to avoid determining the key issue of *mens rea.*" *Gallagher,* 69 N.Y.2d at 531, 516 N.Y.S.2d 174, 508 N.E.2d 909. Sellan argued that his appellate counsel was constitutionally ineffective because his case fell squarely under the rule announced in *Gallagher* and counsel failed to raise the issue.

However, the matter is not so straightforward. After *Gallagher,* and before appellate counsel filed her brief on Sellan's behalf in the Second Department, that same Department decided *People v. Moloi,* 521 N.Y.S.2d 794, 135 A.D.2d 576 (2d Dep't

---

preme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406, 120 S.Ct. 1495. There is, however, no indication that either of these occurred here. Accordingly, we may grant the

writ in this case only if Sellan can demonstrate that the state court decision denying his Sixth Amendment claim amounted to an "unreasonable application" of clearly established federal law.

1987). The *Moloi* court concluded that Moloi's conviction for intentional infliction of serious injury was not inconsistent with a conviction based upon reckless creation of a risk of death, when the defendant had both severely beaten the complaining witness and had thrown a pot of boiling oil at her, causing permanent scarring. *See id.* at 794. "That a defendant may have committed an act with the intent to seriously injure another person does not rule out the possibility that he may have also unintentionally (and recklessly) created a risk of such person's death, since not all 'serious' injuries are necessarily life threatening." *Id.* To a reasonably competent appellate attorney, *Moloi* could have suggested that the Second Department, which was to hear Sellan's appeal, would limit *Gallagher* to cases in which conflicting *mens rea* were charged only with respect to the same result. In Sellan's case, however, as in *Moloi*, the *mens rea* components that Sellan asserts were in conflict related to different outcomes: "recklessly" causing a "grave risk of death" and intentionally "caus[ing] serious physical injury." *Compare* N.Y. Penal L. §§ 125.25[2] *with* N.Y. Penal L. § 125.20.

At the request of the Second Department on Sellan's coram nobis application, Sellan's appellate counsel on direct appeal stated in an affidavit that she considered the *Gallagher* argument, but decided not to raise it. She stated that she did not believe the two homicide counts in Sellan's case were mutually exclusive under *Moloi*. In her affidavit, she explained:

> *Gallagher* found the inconsistency to inhere in mental states relating to the same result, namely death. In Mr. Sellan's case, however, the crimes at issue—manslaughter in the first degree and depraved mind murder—have mental states relating to different results, i.e., serious physical injury and death, respectively. And, as [the Second De-

partment] noted in rejecting the *Gallagher* claim as to the assault crimes in *People v. Moloi*, 135 A.D.2d 576, 577, 521 N.Y.S.2d 794, 'that a defendant may have committed an act with the intent to seriously injure another person does not rule out the possibility that he may have also unintentionally (and recklessly) created a risk of such person's death, since not all 'serious' injuries are necessarily life-threatening (see Penal Law § 10.00(10)).'

Counsel acknowledged that the Fourth Department had recently decided *People v. Robinson*, 538 N.Y.S.2d 122, 145 A.D.2d 184 (4th Dep't 1989), which "agreed with Mr. Sellan's precise contention, albeit with a dissent."

In *Robinson*, the defendant was charged with intentional murder in the second degree, N.Y. Penal L. § 125.25[1], and depraved mind murder in the second degree, N.Y. Penal L. § 125.25[2], for beating his victim into unconsciousness, binding him with cord, and leaving him to die of hypothermia in a public park. The jury ultimately convicted Robinson of both depraved mind murder and manslaughter in the first degree. *See Robinson*, 145 A.D.2d at 185, 538 N.Y.S.2d 122. The Fourth Department reversed the convictions and ordered a new trial, citing *Gallagher*, over a dissent that cited *Moloi* and found no repugnancy because the two mental states did not relate to the same result. On March 22, 1990, two years after appellate counsel filed her initial direct appeal brief in 1988, and after the Appellate Division denied Sellan's application for a writ of coram nobis, the New York Court of Appeals affirmed without opinion the Fourth Department's decision in *Robinson*. *See People v. Robinson*, 75 N.Y.2d 879, 554 N.Y.S.2d 473, 553 N.E.2d 1021 (1990). On April 16, 1990, Sellan's appellate counsel filed a second affidavit

reversing her initial position, and supporting Sellan's motion to reargue his direct appeal. She explained that the decision in *Robinson* had prompted her change of position.

In light of *Moloi*, we cannot conclude that the Second Department acted unreasonably when it denied Sellan's petition for a writ of coram nobis. Were we to consider that court's decision under a pre-AEDPA *de novo* level of deference we might find error. Indeed, the *Moloi* court actually held that Moloi's claim of repugnancy was waived because counsel neither objected at trial, nor raised the issue of repugnancy before or after the jury was discharged. *See Moloi*, 521 N.Y.S.2d at 794. Thus its discussion of the repugnancy question and *Gallagher* was arguably dicta. This could be read to suggest that Sellan's claim was stronger than appellate counsel believed it to be. But that claim was not so strong that it was unreasonable for the coram nobis court to conclude that appellate counsel's position was within the bounds of professional conduct under *Strickland.*

■■ The coram nobis court knew that Sellan's counsel carefully considered raising the *Gallagher* issue, but ultimately decided the claim was not likely to succeed, perhaps because the direct appeal was before the Second Department, which had foreshadowed its approach to repugnancy claims in *Moloi*. The state court was also aware that appellate counsel raised other strong claims in her appellate brief and that in her professional judgment, at the time she filed her brief, the arguments she did raise were more likely to succeed than the *Gallagher* argument that she omitted. Indeed, the Appellate Division held that one of the claims raised on direct appeal was meritorious, though it ultimately found the error harmless. *See People v. Sellan*, 533 N.Y.S.2d at 110, 143 A.D.2d at 691.

"This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536, 106 S.Ct. 2661 (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Assigned appellate defense counsel is not required to raise every non-frivolous issue on appeal as requested by a defendant. *See Jones*, 463 U.S. at 751, 103 S.Ct. 3308 ("Neither *Anders [v. California* ] nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."). Finally, it was reasonable for the coram nobis court not to have expected appellate counsel to predict changes in state law or to anticipate the Court of Appeals' decision in *Robinson*. *See Strickland*, 466 U.S. at 690, 104 S.Ct. 2052; *Jameson*, 22 F.3d at 429.

In light of the foregoing, we cannot say that it was an "unreasonable application" of *Strickland* for the Appellate Division to resolve Sellan's ineffective assistance of counsel claim against him. Since we find that the first element of *Strickland* was not unreasonably applied, we need not address the second element—whether petitioner was prejudiced by unprofessional errors. We have also considered appellant's remaining arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment denying the petition for a writ of habeas corpus.