Samuel DAVIS, Petitioner–Appellant,

v.

Walter KELLY, Superintendent, Attica Correctional Facility; Glen S. Goord, Commissioner of New York State Department of Correctional Services, Respondents–Appellees.

Docket No. 01–2067.

United States Court of Appeals, Second Circuit.

Argued: Dec. 17, 2002.

Decided: Jan. 7, 2003.

Polly N. Passonneau (Elizabeth A. Lesser, on the brief by appointment), New York, NY, for Petitioner–Appellant.

Cynthia J. Pree, Assistant District Attorney (Joseph N. Ferdenzi, Allen H. Saperstein, on the brief), for Robert T. Johnson, District Attorney, Bronx County, Bronx, NY, for Respondents–Appellees.

Before CALABRESI, B.D. PARKER, JR., and RAGGI, Circuit Judges.

PER CURIAM.

Samuel Davis ("Davis") appeals from the decision of the United States District Court for the Southern District of New York (McKenna, *J.*), dismissing his habeas

petition. We affirm on grounds other than those stated by the district court.

## BACKGROUND

Davis was indicted on April 17, 1986, on a charge of murdering his wife. Davis' first trial began on Sept. 18, 1987 and ended in a mistrial on December 6, 1987. Due to a series of delays, Davis was not retried until January 7, 1991. The second trial resulted in a conviction for murder in the second degree in violation of Section 125.25 of the New York State Penal Law, for which Davis was sentenced to an indeterminate term of twenty-five years to life imprisonment.

Davis' son, who was six years old at the time of the murder and who was present in his family's apartment when the murder took place there, testified at both trials. In the first trial, Davis' son testified that he saw Davis enter the apartment and push his mother to the floor, that he heard two bangs and saw blood on her face and chest, and that Davis then left the apartment. Davis' son did not testify that he saw his father shoot his mother or that he saw his father with a gun. Davis' son testified again in the second trial. At that trial, he additionally maintained that on the day of the shooting he had seen a revolver in his father's hand and stated that when he had testified at the first trial, he had not remembered seeing the revolver.

In his habeas petition to the district court, Davis claimed *inter alia* that the fifty-seven month delay before his second trial violated his Sixth Amendment right to a speedy trial. In particular, he argued that the delay was prejudicial insofar as it led to the change in his son's testimony, which was a central element of the prosecution's case. In a report and recommendation to the district court filed August 3, 2000, Magistrate Judge Ellis suggested

that the speedy trial claim should be dismissed, in part because Davis had made no showing of prejudice. The district court, in a memorandum and order dated November 29, 2000, rejected Davis' objections to the magistrate judge's report and dismissed the petition. With respect to the question of prejudice, the district court reasoned that there is "a real distinction . . . between the impairment of the defense of a case, and the enhancement of the prosecution of a case," and concluded that only impairment of the defense qualifies as prejudicial for the purposes of determining whether a defendant's right to a speedy trial has been violated. Finding that the change in testimony enhanced the prosecution's case, rather than impaired the defense's, the court agreed with the magistrate judge that there was no showing of prejudice.

On January 31, 2001, the district court granted a certificate of appealability "only as to the issue whether petitioner was denied the Sixth Amendment right to a speedy trial to his prejudice in that the testimony of Aaron Davis [Davis' son] at age eleven at the petitioner's second trial in 1991 was more incriminating than Aaron Davis' testimony at age eight at petitioner's first trial in 1987." On May 28, 2002, this court denied Davis' motion to expand the certificate of appealability.

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, a writ of habeas corpus may not be granted with respect to a state court decision that has "adjudicated [a petitioner's claims] on the merits" unless the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1). The AEDPA further establishes that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

We have held that "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). The New York Supreme Court, Appellate Division, First Department, affirmed Davis' conviction, holding his speedy trial claim "to be without merit." *People v. Davis,* 226 A.D.2d 125, 126, 640 N.Y.S.2d 53 (N.Y.App.Div.1996). This is sufficient under *Sellan* to trigger AEDPA deference.

The determination of whether pre-trial delay violates the Sixth Amendment is governed by *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which identified four factors "courts should assess in determining whether a particular defendant has been deprived of his right[:] Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* further instructed that the weight given to the individual factors must be evaluated on a case-by-case basis:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic

qualities; courts must still engage in a difficult and sensitive balancing process *Id.* at 533, 92 S.Ct. 2182.

 The government does not dispute that Davis complained of the delay prior to his retrial and thus adequately asserted his right. There is also no question that the delay of over three years between the first and second trials was sufficient to trigger an inquiry into a possible Sixth Amendment violation. *See Barker,* 407 U.S. at 530, 92 S.Ct. 2182. In considering Davis' motion to set aside the verdict, the New York Supreme Court found that "the delay involved here was occasioned by the repeated replacements of the defendant's attorney at his request." *People v. Davis,* No. 1797/86, slip op. at 8 (July 25, 1991) (order denying defendant's motion to set aside the verdict). Under the AEDPA, we must accept this finding of fact unless it is controverted by "clear and convincing evidence." We find that it is not.

Because we must accept that the delay in Davis' retrial is attributable to Davis' own actions, we cannot say that the New York Appellate Division's ruling that the delay did not violate the Sixth Amendment was "an unreasonable application of" *Barker.* This is so even if we assume *arguendo* that the change in the testimony of Davis' son between the first and second trial was prejudicial. Balancing the *Barker* factors necessarily requires a court to make discretionary judgments. It is not unreasonable to say in this case that Davis' role in causing the delay outweighed any amount of prejudice that might have resulted from his son's changed testimony.

 In some contexts in which AEDPA deference applies, it may be incumbent on federal courts to go beyond the conclusion that the state court's decision was not an unreasonable application of Supreme Court law and to say what they believe that law to be. *Kruelski v. State of Con-*

*necticut Super. Ct.*, 316 F.3d 103, 105 (2d Cir.2003). But the reason for doing so—to give state courts that might face the same issue in the future the benefit of knowing what federal appellate courts believe the correct reading of federal law to be—is not always present. Where, as in the instant case, the state court's decision satisfies AEDPA review not because it is a reasonable interpretation of an unclear or incomplete Supreme Court precedent, but because it is a reasonable application of a clearly established, but discretionary standard, little is gained by extended discussion of the federal standard. *See id.*, at 107.

The district court relied on a putative distinction between "the impairment of the defense" and "the enhancement of the prosecution" of a case and held that "prejudice" in *Barker* refers only to the former. We have concluded, however, that even assuming that the change in the testimony of Davis' son was prejudicial, the New York court's decision was not unreasonable and that, therefore, under the AEDPA, Davis' petition cannot be granted. Consequently, we are not required to decide whether the district court's prejudice analysis was correct.

We have considered Davis' other arguments and find them meritless. We therefore AFFIRM the judgment of the district court.