**George HILL, Petitioner–Appellant,**

v.

**Charles GREINER, Superintendent, Ossining Correctional Facility, Respondent–Appellee.**

No. 03–2030.

United States Court of Appeals, Second Circuit.

Sept. 4, 2003.

Dawn M. Cardi, New York, NY, for Petitioner–Appellant.

Thomas M. Ross, Assistant District Attorney Kings County (Leonard Joblove, Assistant District Attorney, of counsel, Charles J. Hynes, District Attorney, on the brief), Brooklyn, NY, for Respondent–Appellee.

PRESENT: Hon. ROGER J. MINER, Hon. CHESTER J. STRAUB, and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Petitioner–Appellant George Hill appeals from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*), entered December 13, 2002, denying Hill's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hill claims he was prejudiced by the government's withholding of exculpatory and impeaching evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

On October 22, 1993, Hill was convicted of attempted murder in the first degree in New York State Supreme Court for the shooting of police officer Paul Freitas. Hill was also convicted of aggravated assault and a weapons charge. He was sentenced to concurrent prison terms of twenty years to life, one-third to twenty-five years, and five to fifteen years, and is currently serving his sentence.

The audiotape ("911 tape") of police radio communications and calls to 911 involving the events that led to Hill's arrest and conviction was allegedly withheld from the defense at trial because the government assumed the tape had been destroyed. The trial court instructed the jury that–due to the unavailability of the tape–they could infer that statements by the prosecution witnesses on the 911 tape would not have supported the State's case.

After the trial was over and at the urging of Hill's counsel, the police conducted another search for the tape and located a copy. In light of this belated discovery, Hill moved pursuant to New York Criminal Procedure Law § 330.30(1) that the verdict be set aside because a copy of the 911 tape had been discovered. After a

hearing, the trial court denied Hill's motion. He appealed to the Appellate Division, Second Department, and the appeal was denied. *People v. Hill*, 244 A.D.2d 572, 665 N.Y.S.2d 925 (2d Dep't 1997) (mem.). The New York Court of Appeals denied Hill leave to appeal. *People v. Hill*, 91 N.Y.2d 973, 672 N.Y.S.2d 853, 695 N.E.2d 722 (1998) (table).

Hill then filed a petition for a writ of habeas corpus in federal district court in the Eastern District of New York, claiming a *Brady* violation in connection with the prosecutor's failure to turn over a copy of the 911 tape. On December 4, 2000, the District Court orally denied Hill's habeas petition. The District Court performed the analysis required by *Brady* and concluded that the 911 tape was "not favorable to the defendant in any way, it wouldn't have helped this case and . . . the defendant was in a better position as a result of the stipulation. I can't see how I can find a constitutional violation."

Pursuant to § 2253(c), the District Court issued a certificate of appealability as to two questions: "(1) whether petitioner exhausted his claim in state court and, if not, whether petitioner is barred under state procedural law from returning to state court to exhaust his claim; and (2) whether there was a reasonable probability that the alleged non-disclosure of the audiotape would have affected the outcome of petitioner's trial." We review the District Court's denial of Hill's petition *de novo* and its factual findings for clear error. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002).

## DISCUSSION

As a threshold matter, although the District Court granted a certificate of appealability on the question of exhaustion, the parties do not appear to dispute this issue. Indeed, the government concedes that Hill exhausted his claim in state court, noting that Hill "fairly presented his *Brady* claim to the Appellate Division," and that his application for leave to appeal to the New York Court of Appeals was denied.

Where a claim has been "adjudicated on the merits in [s]tate court," we may grant the writ only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The government asserts that this deferential standard governs our review of Hill's petition because "the Appellate Division determined [Hill's] *Brady* claim on the merits." As Hill accurately notes, however, the Appellate Division did not mention *Brady* (or any other federal claims) when it denied his appeal. In a very concise opinion, the Appellate Division determined that the trial court's "adverse inference charge was an appropriate Rosario sanction." *Hill*, 244 A.D.2d at 572, 665 N.Y.S.2d at 925. While this may suggest that the Appellate Division adjudicated the *Brady* claim on the merits, *see generally Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir.2001), we need not resolve that question because under either a deferential standard or *de novo* review, we find that Hill's *Brady* claim lacks merit.

In bringing its case against Hill, the government was required, under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to turn over any exculpatory evidence or evidence that could be used to impeach government witnesses. In the *Brady* setting, "a defendant is deprived of a fair trial . . . when there is a reasonable probability that the government's . . . suppressed evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Mendez v. Artuz,*

303 F.3d 411, 412 (2d Cir.2002) (per curiam) (internal quotation marks omitted). Thus, the government has an obligation to "disclose material evidence favorable to a criminal defendant." *United States v. Orena,* 145 F.3d 551, 557 (2d Cir.1998). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citation and internal quotation marks omitted).

We perform our own independent examination of the record in determining whether the suppressed or withheld evidence is material. *United States v. Payne,* 63 F.3d 1200, 1209 (2d Cir.1995). Whether confidence in the verdict is undermined by the suppressed evidence depends on the strength of the case against the defendant. *Orena,* 145 F.3d at 558.

We need not decide whether the 911 tape was improperly withheld from Hill because we agree with the District Court that the contents of the tape do not undermine confidence in the outcome of the case. Hill claims that he could have used the 911 tape to impeach the testimony of two of the witnesses placing Hill at the scene of the shooting. There is no merit to this assertion. Nathan Dickerson, an eyewitness, stated at trial that he told the police *in person* that a person nicknamed "Georgie" or "Face" was shooting at him. Dickerson is also believed to be (though it is not conceded by the government) the unidentified individual who made a 911 call that night. On the call, the individual gave similar information to the police as Dickerson did in person, but he apparently did not identify Hill by name (or nickname). Hill believes that Dickerson's failure to identify him on the 911 tape could have been used to impeach Dickerson.

Assuming that Dickerson was actually the caller, the fact that Dickerson gave some information to the police in person and some different information on the 911 call is not enough to detract from confidence in the verdict. That Dickerson did not identify Hill by name or nickname on the 911 call does not detract from his testimony that he so informed Officer Freitas and his partner, Officer DeAngelis, in person.

Hill also alleges that the 911 tape would have discredited the identification of Hill by another witness, Lindsey Fair. Fair was driving with Hill as the passenger in his car. After being pulled over by police, Hill fled the car and shot the pursuing Freitas from behind some bushes. Fair was subdued by Officer DeAngelis and informed him that Hill was Fair's passenger.

Hill argues that Fair was coerced by physical force into identifying Hill, and that the 911 tape reflects this. It does not. The 911 tape merely reflects that emergency medical personnel were called to treat an unidentified individual for facial injuries. It does not identify Fair as the individual. Moreover, the 911 tape does not detract from any witness testimony. Officer DeAngelis stated on the stand that, after removing a gun from Fair's waistband and holding him against the car, Fair attempted to flee. DeAngelis did not dispute that Fair might have been injured during his arrest. Indeed, DeAngelis stated openly: "When [Fair] pushed back on me and tried to push back, I smashed my arm into his neck. And his head hit the roof of the car." The 911 tape does not expand beyond what DeAngelis already admits and it in no way undermines confidence in the verdict.

Even without the identification of Hill by both Dickerson and Fair, the verdict is not disturbed. The government presented two other eyewitnesses placing Hill at the scene. Officer Freitas picked Hill out of a photo array and identified him as the individual he chased after the police stop. An-

other witness, Rafael Gonzalez, identified Hill as the shooter and testified that he saw Hill emerge from bushes and fire shots at Freitas. The day of the shooting, Gonzalez selected Hill out of a photo array and identified him as the shooter. Three days later, Gonzalez picked Hill out of a lineup. The 911 tape calls into question none of this testimony. It cannot be said that the 911 tape is "material evidence" such that it creates a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Orena,* 145 F.3d at 557.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.