CALABRESI, Circuit Judge,
concurring:
This is one of the rare cases in which a habeas petitioner may well be innocent. Cf Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 148 (1970) (fearing for “the unusual case of the innocent man” in danger of “being burdened by so much dross in the [habeas] process”). Hawthorne was convicted solely on the basis of his confession — a confession that he claims was coerced and that is squarely contradicted in many of its particulars by the physical evidence obtained at the crime scene.
The question of Hawthorne’s innocence, however, is not the one we are encouraged — or, at times, even allowed — to ask in habeas cases such as this. During the past several decades, many both inside and outside the courts have called for federal habeas review to focus on issues that “cast doubt upon the prisoner’s guilt,” Schneckloth v. Bustamante, 412 U.S. 218, 258, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring), rather than “technical errors unrelated to guilt or innocence,” Warren E. Burger, Annual Report to the American Bar Association by the Chief Justice of the United States, 67 A.B.A. J. 290, 292 (1981). Yet, amidst these calls, the Supreme Court and Congress have shaped habeas review so that technical errors — typically by prisoners and their counsel — often preclude genuine inquiry into guilt and innocence. See Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub. L. No. 104-132,110 Stat. 1214; Coleman v. Thompson, 501 U.S. 722, 746-51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Murray v. Carrier, 477 U.S. 478, 490-91, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).
I recognize that tradeoffs between accuracy and fairness on the one hand, and efficiency and comity on the other, are unavoidable, and not unique to habeas. Yet recent Supreme Court decisions seem to me to limit the former while doing nothing that usefully promotes the latter. Last year, in Harrington v. Richter, the Court held that a state court’s rejection of a habeas petitioner’s federal claims warrants AEDPA deference even when the state court gives no reasons for its rejection. — U.S.-, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011). When, as in the case before us, the state court asserts without further explanation that “[t]he defendant’s remaining contentions are without merit,” we are to imagine what reasons the state court might have had for its conclusion. Sometimes' — as again in the instant case, see supra at 197 — the reasons we invent are ones that we then go on to brand as potentially dubious under clearly established federal law. Still, if our imagined reasons, even if quite incorrect, are not so incorrect under Supreme Court holdings that we could not imagine “fair-minded jurists” who would approve of them, Richter holds that our review is over. See Richter, 131 S.Ct. at 786.
This is not comity. If anything, it is insulting to New York. We impute a view to its courts that they have never in fact espoused. We then deride that view as wrong, even clearly wrong under federal appellate court precedents, just not unreasonably wrong under prior Supreme Court holdings. But why should one assume that New York courts, if they actually considered the federal question involved, *200 would decide it differently from the bulk of federal appellate courts?
Nor is it clear how this process promotes efficiency. If the state court has in fact given full and thoughtful consideration to Hawthorne’s federal arguments, it would surely be more efficient for us to review an opinion in which that court’s reasoning is stated, even if briefly, rather than having to imagine what that reasoning might have been. Reviewing actual reasons rather than imputing hypothetical ones would be more efficient not just for the federal courts, but also for litigants, who now are forced to anticipate every argument that we might conceive.
Under the present system, the only efficiencies gained are to the state courts. And they are minor ones. Such courts are saved the trouble of writing down the reasons for their decisions. See Richter, 131 S.Ct. at 784 (recognizing state courts’ pressing need, given their case loads, to “concentrate [their] resources where opinions are most needed”). But, if conserving state resources is the goal, why do we force state courts to think through petitioners’ federal claims at all?
As I explained a decade prior to Richter, if state courts were not given AEDPA deference — or if they were not given the full measure of AEDPA deference — when they disposed of claims summarily, they would be able, if they so chose, to leave complicated federal questions to the federal courts. See Washington v. Schriver, 255 F.3d 45, 62 (2d Cir.2001) (Calabresi, concurring). This would advance AED-PA’s purpose of ensuring meaningful habeas review while preventing the statute from imposing — contrary to its purposes— an unmanageable burden on state courts to police federal law. State courts would be free to decide issues of federal law if they wished, and when they did, federal courts would be required to defer to them. But state courts would not be forced to take on that task if they preferred not to.
Soon after Schriver, this Court chose to take a different path from that which I had urged. See Sellan v. Kuhlman, 261 F.3d 303, 311-14 (2d Cir.2001). Among the concerns Sellan expressed was that my preferred course would “have the practical effect of shunting serious arguments as to state claims to state court, and serious arguments as to federal claims to federal court.” Id. at 314. I myself see nothing wrong with this: our Court does it regularly when we certify important questions of state law to state supreme courts, which are best positioned to answer them.
But even those who fear this outcome should note that something much worse has actually come about as a result of the Sellan/Richter approach. In the case before us, for example, the only serious consideration of “arguments as to federal claims” can be found in federal court opinions — ours and that of the district court— not in those of state courts. Realistically, then, Hawthorne’s federal claims were in fact “shunt[ed]” to the federal courts. Moreover, and most troubling, the federal courts, to which the claims were shunted, were barred from answering the shunted federal questions in the way they thought best. Sellan and Richter instead required the federal courts to set their own considered reasons aside and defer to hypothetical reasons which the state courts may or may not ever have entertained. Habeas review is more than inefficient when it requires courts to play this kind of guessing game about other courts’ reasoning; indeed, when it makes courts defer to imaginary reasons, habeas review, in my judgment, becomes downright foolish.
In any event, it is clear what habeas today is not. It is not focused on the *201 possible innocence of the defendant. In the present case, we find ourselves, like Plato’s painted bed, at two removes from reality: asking not whether Hawthorne is guilty of the brutal crimes charged, nor even whether his lawyer’s clearly inadequate performance may have prejudiced Hawthorne’s defense against those charges. Instead, we can ask only whether someone might have some reason — not necessarily even a good one — for thinking that matters probably would have turned out the same for Hawthorne even if his lawyer had performed adequately. What is served by this exercise? Not efficiency, since we have spent our time speculating as to the state court’s reasoning, and litigants are forced to address every reason we might concoct. Not comity, since we first provide, and then criticize, the very reasoning to which we purport to defer. And certainly not reasoned inquiry into guilt or innocence, as Mr. Hawthorne remains in jail for crimes he may not have committed.
Nevertheless, I believe that the opinion of the Court states the law as it is today, and, since I am bound to follow that law, I concur.