Jonathan GONZALEZ, Petitioner,

v.

Charles R. REINER, Superintendent
Green Haven Correctional
Facility, Respondent.

No. 00 CIV. 8801(VM).

United States District Court,
S.D. New York.

Nov. 15, 2001.

Jonathan Gonzalez, Green Haven Correctional Facility, Stormville, NY, pro se.

### DECISION AND ORDER

MARRERO, District Judge.

Jonathan Gonzalez ("Gonzalez"), *pro se* and incarcerated, petitions the Court for a writ of habeas corpus. Gonzalez claims he is entitled to habeas corpus relief because his state conviction is based on (1) insufficient evidence and (2) impermissibly suggestive identifications. Respondent Charles R. Reiner ("Reiner"), who serves as Superintendent of the Green Haven Correctional Facility ("Green Haven") and is represented by the Bronx County District Attorney, filed opposition to Gonzalez's petition. For the reasons set forth below, Gonzalez's petition is Denied.

### I. BACKGROUND

Gonzalez, incarcerated at Green Haven, was convicted on September 4, 1997 of robbery in the first and second degrees and criminal possession of a weapon after a jury trial before the New York State Supreme Court, Bronx County. At trial, the prosecution introduced evidence that at approximately 12:14 a.m. on January 14, 1996, two men, Edson Velasquez ("Velasquez") and his uncle Mario Arzu ("Arzu"),

were robbed while walking on 152nd Street in the Bronx. Velasquez and Arzu testified that on that night they passed a group of three young men standing outside a pool hall, including Gonzalez, who began to follow them. Trial Transcript (hereinafter "Tr.") at 5–6, 8, 39, 94, 368, 370–71. When a fourth man began following them, Velasquez told Arzu: "[L]et's run, those guys are going to rob us," and began to walk faster. Tr. at 88, 95–96, 370.

Arzu testified that he, however, stopped walking. He observed Gonzalez standing approximately eight feet away, looking at him with what appeared to be his clenched fist positioned at his waist area inside his coat jacket. Tr. at 375, 378, 414. Suddenly, one of the four men [1] grabbed and held Arzu from behind while another took Arzu's chain out from under his shirt, felt it, and snatched it off Arzu's neck. Tr. 374–75, 414.

Velasquez testified that, upon realizing that he had left his uncle behind with the four men, he returned because he feared trouble. Tr. 88, 95–96, 370. Upon his return, he saw that one of the men had Arzu's chain in his hands while Gonzalez remained standing against the wall with his clenched fist steadied inside his coat jacket at his waist area, approximately four feet away from Velasquez. Tr. 14, 16, 38, 95, 99, 100, 105, 165. Velasquez did not run to obtain help because, observing Gonzalez's stance, he believed Gonzalez was armed with a weapon. Tr. at 7, 16, 99, 102.

Velasquez was watching Gonzalez when another man suddenly approached Velasquez and demanded to see his chain. Velasquez refused, and Jackson immediately held Velasquez while another man at-

---

1. Only Gonzalez and his co-defendant, Reginald Jackson ("Jackson"), were apprehended by police in connection with the January 14, 1996 robbery. The other two perpetrators were not apprehended.

tempted to snatch the chain. A struggle ensued during which Velasquez was thrown on the sidewalk, at which point his chain was taken. Tr. at 43–45, 87–88, 102, 106–07, 200, 250, 374, 376, 379, 416, 419–20, 429.

Velasquez and Arzu then ran to a telephone booth, called the 911 emergency number and reported the incident. Minutes later, Police Sergeant Joseph Erbetta ("Erbetta") and Police Officer Victor Dempsey ("Dempsey") were driving north on Prospect Avenue when they observed Velasquez and Arzu signaling them to stop. Tr. 48, 96, 264–66, 382, 396–97, 441–43, 453. Arzu, Velasquez and Dempsey testified that when the officers stopped, Velasquez and Arzu informed them they had been robbed by one white Hispanic man and three black men. Tr. 48, 313, 315, 316, 320, 382. Velasquez and Arzu then sat in the backseat of the patrol car, while the officers drove westbound, against the flow of traffic, on East 152nd Street in an attempt to find the perpetrators. Tr. 51, 75, 176, 197, 266, 284, 287, 249, 383, 403, 443–44, 460. Approximately one minute into this search, they found a group of at least ten individuals standing in front of the pool hall mentioned above. Tr. 180, 266, 297, 325, 401, 408.

Velasquez and Arzu pointed out Gonzalez, whom they recognized as the white Hispanic male, as one of the robbers. Tr. at 7, 76–77, 85, 176, 179–82, 189, 231, 246–47, 383–84, 408. Officer Dempsey stopped the car, exited the vehicle, and jogged across the street to approach Gonzalez, saying, "stop where you are." Tr. 268, 408, 446. Gonzalez ran away. Tr. at 268, 446.

Dempsey and Erbetta chased Gonzalez. Dempsey testified that he saw Gonzalez remove a gun from his jacket pocket and place the gun in a snow bank. Dempsey recovered the gun, which contained six live rounds, while Erbetta chased Gonzalez. After a brief struggle, Erbetta, with the assistance of Dempsey, apprehended Gonzalez in an alleyway at 152nd and Tinton Avenue. Tr. at 269, 273, 285, 291–94, 447, 450, 478.

Velasquez and Arzu had exited the police car and stood on the sidewalk outside the alleyway. They identified Gonzalez as one of the robbers and the officers arrested Gonzalez. Tr. at 77–78, 86, 250, 273–74, 326–27, 447. Shortly thereafter, Jackson was identified by Arzu and Velasquez, and arrested, in front of the pool hall. Tr. at 250, 327, 421.

Initially, Gonzalez and Jackson were tried together. However, at trial, Velasquez made an impermissibly suggestive identification of Gonzalez. In response to counsel's objection, the trial judge ordered the identification stricken from the record to avoid prejudice to Gonzalez. The trial judge also granted Jackson's motion for a mistrial, without prejudice, because Jackson's defense would be jeopardized if he were not permitted to cross-examine Velasquez about the in court identification. Tr. 358–61. Gonzalez and his attorney considered but decided against moving for a mistrial without prejudice, even though the trial judge indicated that he would grant it. Tr. 345–46, 357–61. Tried individually, Gonzalez was found guilty by the jury of two counts of robbery in the first degree, two counts of robbery in the second degree and one count of criminal possession of a weapon in the third degree.

Gonzalez, by counsel, appealed his conviction on the grounds that the government presented insufficient evidence to prove, beyond a reasonable doubt, that Gonzalez "displayed" what appeared to be a gun and that Gonzalez shared the other robbers' intent. Citing New York State law, the Appellate Division, First Department, affirmed the conviction on October

21, 1999. Specifically, the Appellate Division found that "the verdict was based on legally sufficient evidence" of Gonzalez's "active and intentional participation in the robbery and his display of what appeared to be a firearm." *People v. Gonzalez*, 265 A.D.2d 224, 698 N.Y.S.2d 3, 4 (1st Dept. 1999). The Appellate Division's decision did not discuss any federal claims or reference any federal law.

The facts set forth above are not in dispute. Gonzalez, in his habeas petition, raises two questions of legal sufficiency: whether there was a legally sufficient amount of evidence to show that under New York State law he either (1) displayed a weapon or (2) had the requisite intent to commit robbery. Reiner, in his opposition to the petition, asserts that there was legally sufficient evidence and that a writ of habeas corpus should not issue. Gonzalez, in his *Traverse* Response to Respondent's Opposition to Petition for Habeas Corpus (hereinafter "Traverse Brief"), raises a new issue regarding whether the impermissibly suggestive in-court identification deprived him of his rights to due process under the Fourteenth Amendment of the United States Constitution. Reiner has not had an opportunity to respond to Gonzalez's second claim. Nevertheless, the Court addresses this claim.

## II. *DISCUSSION*

### A. *STANDARD OR REVIEW*

■ Gonzalez's petition was filed on October 30, 2000 and is governed by 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act (hereinafter "AEDPA"). *See Morris*

*v. Reynolds*, 264 F.3d 38 (2d Cir.2001). Under AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim that was "adjudicated on the merits" in the state court unless the state court decision is either contrary to clearly established federal law or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Morris*, 264 F.3d at 46 (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Clearly established federal law refers to the holdings only, not the dicta, of the United States Supreme Court. *See id.* The state court's application of clearly established federal law must be objectively unreasonable, not merely erroneous. *See Williams*, 529 U.S. at 387 n. 14, 120 S.Ct. 1495; *accord Clark v. Stinson*, 214 F.3d 315, 320–21 (2d Cir.2000). Of course, where, as here, a party appears *pro se*, the courts are required to broadly construe the *pro se* pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).

■ Whether a matter was adjudicated on the merits depends on whether the state court made a decision based on the "substance of the claim advanced." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2nd Cir. 2001); *see also Washington v. Schriver*, 255 F.3d 45 (2d Cir.2001). In *Sellan*, the issue was whether a state court's disposition of a petitioner's claim for ineffective assistance of counsel was "adjudicated on the merits" where the Appellate Decision issued a summary order without discussion of federal law or basis in federal law.[2] *See*

**2.** The order read, in its entirety, "Motion by defendant for a writ of coram nobis to vacate an order of this court dated October 3, 1988, which affirmed a judgment of the Supreme Court, Queens County, rendered March 16, 1987, on ground of ineffective assistance of appellate counsel. (*People v. Bachert*, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318). Upon the papers filed in support of the motion and the papers filed in opposition

*Sellan*, 261 F.3d at 308. The Second Circuit stated that "[n]owhwere does the statute make reference to the state court's process of reasoning." *Id.* at 311. Accordingly, it held that

a state court "adjudicates" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.

*Id.* at 312. As to the first prong, whether a decision is made "on the merits" may be contrasted against a decision made for procedural reasons. Analytically, the Second Circuit instructed that a federal habeas court should consider

(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits.

*Id.* at 314 (citing *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir.1999)). To hold otherwise, would be "at odds with the animating spirit of the AEDPA which respects the state court's decision as to all [state and federal] claims." *Id.* at 313.

■ Applying the analysis set forth by the Second Circuit, this Court finds that the State Appellate Division's decision here qualifies as an adjudication on the merits under the AEDPA, even though the Appellate Division did not discuss any federal claim. It is well-settled that in a criminal prosecution, failure to prove an element of a crime beyond a reasonable doubt would violate the United States Constitution. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Appellate Division held that,

based on the record before it, there was "legally sufficient" evidence of both Gonzalez's "display" of an object that appeared to be a gun and of his having the requisite intent. *Gonzalez*, 698 N.Y.S.2d at 4.

The Appellate Division did not cite what New York courts have done to resolve such matters in similar circumstances. However, its decision was based on the parties' legal memoranda which detailed relevant state laws and precedents. Further, that court was not presented with any procedural or other ground that would bypass adjudicating the appeal on the merits. Moreover, the Appellant Division's written opinion itself explicitly states that it is based on the merits of the claim, rather than procedural grounds. Finally, there can be no doubt that the Appellate Division's adjudication of the sufficiency of the evidence was reduced to a judgment because it affirmed the conviction on that ground.

Accordingly, this Court is constrained under § 2254(d) to give due deference to the State court's ultimate decision regarding the sufficiency of the evidence, unless that determination is deemed to be an unreasonable application of, or contrary to, clearly established federal law.

Critical to Gonzalez's second claim, as will be discussed below in Section II(C), apart from the trial proceeding itself, there is no record of any State court proceeding or adjudication regarding the identification issues raised by Gonzalez in his Traverse Brief.

**B. SUFFICIENCY OF THE EVIDENCE**

■ The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable

thereto, it is ORDERED that the motion is denied."

doubt of every fact necessary to constitute the crime with which he is charged. *See Jackson,* 443 U.S. at 307, 99 S.Ct. 2781; *Fiore v. White,* 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001). The standard for reviewing claims of insufficient evidence asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original); *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995). Only when the record is totally devoid of evidentiary support is a due process issue raised and habeas corpus relief warranted. *See Bossett v. Walker,* 41 F.3d 825, 830 (2d Cir.1994) (citing *Mapp v. Warden,* 531 F.2d 1167, 1173 (2d Cir. 1976)). The burden on petitioner is "very heavy" because all inferences are to be drawn in the prosecution's favor, and "a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (citations omitted). Thus the relevant inquiry is not whether this federal court sitting in habeas corpus would find the same facts to be true, but whether any reasonable fact finder could.

Gonzalez claims that there was insufficient evidence of his "display" of a weapon and of his intent for a jury to find him guilty of robbery beyond a reasonable doubt. As explained below in further detail, the Court does not find the record to be devoid of evidence to support the essential elements of Gonzalez's robbery conviction. Accordingly, the Appellate Division's decision affirming Gonzalez's conviction as based on sufficient evidence was not contrary to or an unreasonable application of clearly established federal law.

### 1. *"Display" under New York Law*

▮▮▮ Gonzalez was convicted of robbery under New York Penal Law § 160.15, which is committed when, during the course of a forcible stealing, a participant in the crime "[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." Gonzalez was also convicted of robbery under New York Penal Law § 160.10, which is committed by a participant in a forcible stealing when he displays "what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" during the course of the crime or immediate flight therefrom. To establish the element of display, the prosecution must demonstrate that: (1) the defendant consciously displayed "something that could reasonably be perceived as a firearm with the intent of compelling an owner of property to deliver it up or for the purpose of preventing or overcoming resistance to the taking;" and (2) the display was actually witnessed by the victim by sight, sound or touch. *People v. Baskerville,* 60 N.Y.2d 374, 469 N.Y.S.2d 646, 457 N.E.2d 752, 756 (1983). The element has been construed broadly to require that "the defendant, by his actions, consciously manifests the presence of an object to the victim in such a way that the victim reasonably perceives that the defendant has a gun." *People v. Lopez,* 73 N.Y.2d 214, 538 N.Y.S.2d 788, 535 N.E.2d 1328, 1332 (1989). A person is criminally liable for the conduct of another, who engages in conduct that constitutes a crime, if he "solicits, commands, importunes, or intentionally aids such person to engage in such conduct." New York Penal Law § 20.20; *see People v. Jackson,* 176 A.D.2d 471, 574 N.Y.S.2d 661 (1st Dept. 1991).

■ Gonzalez claims that the State did not prove his participation in the January 14, 2001 robbery beyond a reasonable doubt because there was insufficient evidence that he "'consciously' displayed something that could 'reasonably' be perceived as a 'firearm' with the 'intent' to make him 'give up the property' or intent of 'preventing['] the victim from 'overcoming the resistance.'" Traverse Brief at 23 (quoting *Baskerville*, 469 N.Y.S.2d 646, 457 N.E.2d at 756). Gonzalez claims that the evidence only shows he stood still with his hand in his pocket. While the evidence at trial showed that Gonzalez was stationary during the robbery and did not touch the victims or their jewelry, the analysis does not end at that point. Both Arzu and Velasquez testified that Gonzalez was among the men who pursued them prior to the robbery. Further, they testified that they observed Gonzalez at a close distance, that he watched them, and that his hand appeared to be clenched in a fist at his waistband. Moreover, subjectively, Velasquez testified that he perceived Gonzalez to be armed and that his perception discouraged him from attempting escape or resistance. Finally, it is relevant that Gonzalez did, in fact, have a gun in his pocket which he discarded when pursued by police officers minutes after the robbery.

Gonzalez has not demonstrated an absence of facts to support the conviction as to the "display" element. Here, the Court finds that on the basis of the testimony regarding Gonzalez's pursuit before the robbery, his proximity, and his stare and stance during the robbery, there was sufficient evidence for a reasonable jury to find that Gonzalez "displayed" a firearm. Accordingly, the Appellate Division's decision affirming the trial conviction that there was legally sufficient evidence to support the "display" element is neither contrary to, nor an unreasonable application of, clearly established federal law.

### 2. *Intent to Rob*

■ The requisite intent to rob can be established by either (1) the act itself or (2) the accessory's conduct and surrounding circumstances. *People v. Coulter*, 240 A.D.2d 756, 660 N.Y.S.2d, 43 (2d Dept. 1997); *People v. Smith*, 188 A.D.2d 295, 590 N.Y.S.2d 493 (1st Dept.1991). As already explained, based on the record at trial, a reasonable fact finder could find that the circumstances, viewed in their totality, created an impression that Gonzalez had a gun. In addition, his presence and conduct prior to and during the robbery led the victims to believe he had a gun and to change their behavior on that basis.

Given Gonzalez's conduct in following the victims before the robbery and his stance and stare during the robbery, the Court is persuaded that there is sufficient evidence from which a reasonable trier of fact would find that Gonzalez intentionally assisted in the forcible thefts. Consequently, the State court decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

### C. *IDENTIFICATION OF GONZALEZ AT TRIAL*

Gonzalez raised a new ground for habeas relief in his Traverse Brief. The Court, interpreting Gonzalez's pleadings with due liberality owed to *pro se* pleadings, addresses this new claim, even though Reiner has not yet responded.

Gonzalez claims that at trial "many Identification Issues arose." In particular, Gonzalez claims that an impermissibly suggestive identification was not cured, that the trial court judge erred in not declaring a mistrial *sua sponte*, and that out-of-court identifications were suggestive and not

corroborated. According to Gonzalez, his conviction was based on these identifications and violates his right to due process under the Fourteenth Amendment of the United States Constitution.

■■■ This Court is precluded from reaching the merits of any of the "Identification Issues" complained of by Gonzalez because he has not exhausted his state remedies. Under the doctrine of exhaustion, a claim raised on federal habeas corpus should previously have been fairly and fully presented to the state courts. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (holding that as to any habeas petition presenting the claim that a prisoner's "state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief"). Here, the State has had no opportunity to address the due process claim because Gonzalez did not appeal or seek any other state post-conviction relief regarding either the in-court or out-of-court identifications. Indeed, he informed the Appellant Division that his appeal "raises no issues regarding the *Mapp/Wade* hearing" at which the out-of-court identifications were at issue. Affidavit in Opposition to Petition for Habeas Corpus, at ¶ 7, Ex. 1 at 4.

Accordingly, the Court dismisses without prejudice Gonzalez's petition for habeas corpus on the grounds that his state conviction was based on suggestive identifications in violation of the U.S. Constitution.

### III.   *CONCLUSION AND ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that Petitioner Jonathan Gonzalez's Application for a Writ of Habeas Corpus on the grounds of insufficient evidence be dismissed;

**ORDERED** that Petitioner Jonathan Gonzalez's Application for a Writ of Habeas Corpus on the grounds of impermissible identification evidence be dismissed without prejudice; and it is finally

**ORDERED** that the Clerk of Court is directed to close this case.

As Alvarez has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). *See also United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011, 1014–16 (2d Cir.1997). The Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**