Ellis DOUGLAS, Petitioner,

v.

Leonard A. PORTUONDO, Respondent.

No. 01 CIV. 9396(VM).

United States District Court,
S.D. New York.

Nov. 6, 2002.

Ellis Douglas, Wallkill, NY, Pro se.

### DECISION AND ORDER

MARRERO, District Judge.

Pro se petitioner Ellis Douglas ("Douglas"), incarcerated at New York State's Shawangunk Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claims that his state court convictions violated his due process rights because they relied on unduly suggestive identification procedures and because the underlying evidence was insufficient. The Bronx County District Attorney's Office filed an opposition on behalf of respondent Leonard Portuondo, the Superintendent of Shawangunk Correctional Facility. For the reasons set forth below, Douglas's petition is DENIED.

### I. BACKGROUND

On June 29, 1995 at approximately 10:00 A.M., a man hailed a taxi-cab driven by Aliyu Usman ("Usman") in the Bronx, New York.[1] At the conclusion of a one to

---

1. Because the transcripts of Petitioner's pre-trial hearing, trial, and sentencing are unavailable from the Bronx County Supreme Court Clerk's Office, (Affidavit In Opposition by Lynetta A.M. St. Claire dated March 22, 2002 ("St. Clair Aff."), ¶ 3), the factual recita-

tion herein is based upon the submissions by Petitioner and the prosecution both in this Court and on direct appeal to the New York Supreme Court Appellate Division, First Department. *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 5 ("If a

five minute cab ride, the passenger directed Usman to stop the cab in the area of 170th Street, 171st Street, and Park Avenue in the Bronx. Then, while still inside the cab, the passenger pointed a silver handgun at Usman and demanded money. Usman gave the man twenty-five dollars, which was all the money he had. The man exited the cab, and Usman saw him walk toward nearby Washington Avenue.

Usman continued driving and pulled over between Park Avenue and Washington Avenue when he saw a police van. He told the officers he had been robbed two minutes earlier. He described the assailant as a black male, between 20 and 21 years old, with a moustache, braided shoulder length hair, wearing a black hat, and carrying a silver handgun. The officers in the van relayed this description over the police radio. Various other officers responded to the area and began a canvass.

Moments later, on nearby 171st Street by Third Avenue, officers Guillermo Baez ("Baez") and Theodore Stefatos ("Stefatos") observed a man on foot from their marked police car. They noticed that he matched the description relayed over their radio and that he was holding something wrapped in what appeared to be a black cloth. As the officers drove near the man, he began walking faster, and when they directed him to stop, the man turned and, from a distance of four feet, pointed a silver handgun at the torso of Officer Stefatos, who was driving the police car. The man assumed what the officers described as a "combat stance," with one hand in a fist holding the gun, supported by his other hand. Stefatos shouted "gun" and floored the accelerator to position the police car behind a nearby parked van. The

man fired two shots at the officers, and a bullet fragment was recovered from the van. The officers radioed for assistance and that shots had been fired.

A witness, Alexandria Armstrong ("Armstrong"), who was on her way to work saw the man shoot at the police car and then enter an apartment building located nearby at 1480 Washington Avenue. Another witness, Carmen Perez, who lived in this building, heard gunshots and was in the process of unlocking the front entrance to go inside when a man with neck length dreadlocks approached her from behind. Noticing a gun, she gave him her keys and ran away. These keys were later found in the front door lock of that building. According to a third witness, Jenny Santiago ("Santiago"), Douglas, whom she knew as a friend of her son, Anthony, knocked on her apartment door and Anthony let him in. Santiago testified that she observed Douglas enter her bathroom, and later, she noticed that there was hair in her bathroom sink. She further noticed that her hairbrush and her husband's scissors had been moved to the sink from their usual location atop the toilet tank. Also found in Santiago's apartment were a hat that did not belong to anyone in Santiago's family, as well as a silver handgun that, according to ballistic testing, was operable, presented signs of having been discharged, and resembled, though did not conclusively match, the markings on the bullet fragment recovered from the van behind which Officers Stefatos and Baez had taken cover.

Later that morning, officer Carlos Guzman ("Guzman") came upon an individual walking towards the elevator inside 1480 Washington Avenue and noticed that the

transcript is neither available nor procurable, a narrative summary of the evidence may be submitted."); *Rodriguez v. Fischer*, No. 01–CV–3993, 2002 WL 1492118, at *1 (S.D.N.Y. July 11, 2002). The Court finds that the current record suffices to resolve Petitioner's claims, particularly since the facts are not in dispute.

man's hair was unevenly cut and in general disarray and that he seemed nervous. The man had no identification. Guzman escorted the man to the lobby, where Stefatos identified the man as the shooter, noting that he no longer had dreadlocks. The man, Douglas was placed under arrest.

Following his arrest, Douglas appeared in a lineup with five other individuals, none of whom had dreadlocks, and was identified by Usman and Armstrong as the perpetrator, as well as by a third witness, Sabrina Bailey. Additionally, Usman was shown the silver gun and hat recovered by police and recognized them as belonging to Douglas.

Following a pretrial hearing pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (the "*Wade* hearing"), the state hearing court determined that the lineup identification procedure was not unduly suggestive. That court determined that: the other participants in the lineup looked reasonably similar to Douglas; nothing about the lineup or police activity surrounding it indicated to the witnesses that they should choose Douglas over anyone else or otherwise directed their attention to him; and that the police did not allow the witnesses to observe Douglas alone or in any other suggestive setting. The court conducting the *Wade* hearing found significant the fact that, in the face of the witness' identifying Douglas, none of the participants, including Douglas, had dreadlocks, those being arguably his most prominent feature before he removed them.

At trial on May 8, 1997, Douglas was found guilty by a jury of two counts of attempted murder in the first degree and one count of robbery in the first degree. Douglas was sentenced to two concurrent twenty years to life terms of imprisonment for the attempted murder counts and a fifteen years to life consecutive term for the robbery. The Appellate Division, First Department affirmed Douglas's convictions on June 6, 2000, *see People v. Douglas*, 273 A.D.2d 24, 709 N.Y.S.2d 527 (1st Dep't 2000), and the New York Court of Appeals denied him leave to appeal from that decision on September 25, 2000. *See People v. Douglas*, 95 N.Y.2d 889, 715 N.Y.S.2d 381, 738 N.E.2d 785 (2000).

## II. DISCUSSION

### A. *STANDARD OF REVIEW*

Douglas's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The AEDPA provides in relevant part that

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States ....

28 U.S.C. § 2254(d)(1). "The AEDPA 'placed a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus,' but only 'with respect to claims adjudicated on the merits in state court.' " *Jenkins v. Artuz*, 294 F.3d 284, 291 (2nd Cir.2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Otherwise, the pre-AEDPA de novo standard of review applies. *Washington v. Schriver*, 255 F.3d 45, 55 (2nd Cir.2001). Therefore, as a threshold matter, the Court must determine whether Douglas's claims were adjudicated "on the merits" by the state Appellate Division.

■ " 'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims ... that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2nd Cir.2001). A state court adjudicates a claim on the merits when it

> (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment ... even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.... To determine whether a state court disposition is "on the merits," we ask "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits."

*Jenkins*, 294 F.3d at 292 (quoting *Sellan*, 261 F.3d at 312, 314).

■ The "contrary to" and "unreasonable application" clauses have independent meanings. *See Jones v. Stinson*, 229 F.3d 112, 119 (2nd Cir.2000). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* (quoting *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495). Under the "unreasonable application" clause, the AEDPA requires a federal habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*

(quoting *Williams*, 529 U.S. at 409, 120 S.Ct. 1495).

## B. *PETITIONER'S PRETRIAL LINE-UP*

■ Douglas first claims that his "distinctive characteristics rendered his lineup unduly suggestive" in violation of his due process rights. (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody dated September 22, 2001 ("Petition") at 5.) The Court finds that this claim was argued on the merits before the Appellate Division. This conclusion is based on the fact that Douglas and the prosecution squarely addressed the underlying issue in their appellate briefs to that court, (Brief for Defendant–Appellant dated December 1999 ("Pet.'s App. Div. Brief") at 28; Respondent's Brief dated April 2000 ("State's App. Div. Brief") at 21), and the fact that the Appellate Division rendered judgment on the substance of the claim, concluding that "the defendant did not meet his burden of establishing that the lineup was unduly suggestive," *see Douglas*, 709 N.Y.S.2d at 528. Accordingly, the Court applies the deferential standard propounded by the AEDPA discussed above.

The due process standards governing permissible lineup identifications are well-settled. "It is the likelihood of misidentification which violates a defendant's right to due process, and ... [s]uggestive confrontations are disapproved because they increase the likelihood of misidentification ...." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ("A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to wit-

nesses for pretrial identification."). According to the Second Circuit,

> [a] lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not. Lineups in which suspects are the only participants wearing distinctive clothing or otherwise matching important elements of the description provided by the victim have been severely criticized as substantially increasing the dangers of misidentification . . . . For example, where eyeglasses were the outstanding feature of the assailant's appearance to the victim and an integral part of the description provided the police, a lineup in which the defendant was the only person wearing eyeglasses was unnecessarily suggestive.

*Raheem v. Kelly*, 257 F.3d 122, 134 (2nd Cir.2001) (citations omitted; internal quotations omitted); *see Frazier v. State of New York*, 187 F.Supp.2d 102, 110 (S.D.N.Y.2002).

The record in this case includes a photograph of the lineup that Douglas asserts was unduly suggestive. (St. Clair Aff., Ex. 1.) The Court has examined this photograph and finds no basis to conclude that the lineup represents an objectively unreasonable application of the principles articulated in *Biggers*, *Wade*, and *Raheem*. Douglas claims that his disheveled hair was a unique characteristic that distinguished him from the other participants in the lineup. (Reply For Petitioner dated April 24, 2002 at 8.) The Court is unpersuaded.

Douglas's hair was disheveled because he had hastily cut his dreadlocks as he fled from the police. This Court finds it salient, as did the New York courts, that Douglas's appearance in the lineup dif-

fered from his appearance as described by Usman in that he had removed what was arguably his most "outstanding feature." Therefore, it cannot be said that Douglas "meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." *Raheem*, 257 F.3d at 134; *Frazier*, 187 F.Supp.2d at 110; *see also Solomon v. Smith*, 645 F.2d 1179, 1183–84 (2nd Cir. 1981) (pretrial identification deemed unduly suggestive where defendant, five feet six inches tall and 130 pounds, was the only participant resembling witness description; other participants were three to five inches taller or 50 pounds heavier).

Additionally, the New York courts were unpersuaded by Douglas's claim that his hair distinguished him from the other lineup participants because all of the participants had differing hair styles. This Court finds this reasoning far from objectively unreasonable because "[t]here is no requirement that . . . in line-ups the accused must be surrounded by persons nearly identical in appearance," *United States v. Reid*, 517 F.2d 953, 965 n. 15 (2nd Cir.1975); *Roberson v. McGinnis*, No. 99–CV–9751, 2000 WL 378029, at *7 (S.D.N.Y. April 11, 2000); *Roldan v. Artuz*, 78 F.Supp.2d 260, 271 (S.D.N.Y.1999), and because "a reasonable effort to harmonize the line-up is normally all that is required." *Roberson*, 2000 WL 378029, at *7; *Gossett v. Henderson*, No. 87–CV–5878, 1991 WL 135601, at *2 (S.D.N.Y. July 18, 1991), *aff'd*, 978 F.2d 705 (2nd Cir.1992), *cert. denied*, 510 U.S. 997, 114 S.Ct. 564, 126 L.Ed.2d 463 (1993). Douglas identifies no other aspect of the lineup that was unduly suggestive and none is apparent from the Court's examination of the photographic record of it.[2] According-

---

2. The Court notes that the lineup, as depicted, consisted of six men with generally similar apparent ages and facial hair. All of the participants were seated with only their

ly, the Court concludes that Douglas has failed to show that admitting the lineup identifications at his criminal trial was an objectively unreasonable application of the due process prohibition of unduly suggestive identification procedures.

## C. SUFFICIENCY OF THE EVIDENCE

■ Douglas also argues that his "convictions for attempted murder in the first degree violated due process because the prosecution's evidence failed to prove beyond a reasonable doubt that the shooter intended to kill the officers and the verdict was against the weight of the evidence." (Petition at 6.) The Court identifies two claims in this language. The first, which is plainly evident, concerns the sufficiency of the evidence of intent to kill. The second arises out of the last phrase in Douglas's claim concerning the "weight of the evidence." For the reasons explained in Section II.D *infra*, a "weight of the evidence" claim is not appropriate for habeas review. It is unclear, however, whether Douglas intends this "weight of the evidence" language to address the persuasiveness of the evidence against him, which is beyond the purview of a habeas petition, or its sufficiency, which is not. Because Douglas is *pro se*, the Court will liberally interpret the language of this claim as raising a sufficiency argument. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2nd Cir.1999) ("[W]e read the pleadings of a pro se litigant liberally and interpret them 'to raise the strongest arguments that they suggest.'" (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2nd Cir.1994))). The Court addresses these two issues together, as

intent to kill is an element of attempted first degree murder.

As a threshold matter, both sufficiency arguments addressed herein were argued by the parties before the Appellate Division, (Pet.'s App. Div. Brief at 44; State's App. Div. Brief at 30), which resolved each one in favor of the prosecution, *see Douglas*, 709 N.Y.S.2d at 528. Accordingly, the Court addresses both of Douglas's sufficiency claims in accordance with the deferential standard of review expressed in AEDPA and presented above.

■ The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case by requiring proof beyond a reasonable doubt of every element of the crime with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228–29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A habeas court reviewing claims of insufficient evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original); *Wheel v. Robinson*, 34 F.3d 60, 66 (2nd Cir.1994), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995). "Only when the record is totally devoid of evidentiary support is a due process issue raised and habeas corpus relief warranted." *Gonzalez v. Reiner*, 177 F.Supp.2d 211, 218 (S.D.N.Y.2001); *see Bossett v. Walker*, 41 F.3d 825, 830 (2nd Cir.1994) (citing *Mapp*

---

chests, heads, shoulders, and upper arms in view, thus rendering height a nonissue. All were dressed casually and had dark brown or black hair. There was moderate variation in build as three of the participants appear slightly heavier than the remaining three, and

two of the men had a slightly lighter skin tone than the remaining four including the defendant. However, these difference do not rise to the level of undue suggestion as articulated in the main text. (St. Clair Aff., Ex. 1.)

v. *Warden*, 531 F.2d 1167, 1173 (2nd Cir. 1976)).

Douglas faces a "very heavy" burden because all inferences are to be drawn in the prosecution's favor, and because "a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss*, 999 F.2d 692, 696 (2nd Cir.1993) (citations omitted). The relevant inquiry, therefore, is not whether this Court sitting in habeas review would find the same facts to be true, but whether any reasonable fact finder could.

New York Penal Law ("NYPL") § 125.27 defines first degree murder in relevant part as follows:

> A person is guilty of murder in the first degree when ... [w]ith intent to cause the death of another person, he causes the death of such person or of a third person[ ] and ... the intended victim was a police officer as defined in subdivision 34 of section 1.20 of the criminal procedure law who was at the time of the killing engaged in the course of performing his official duties, and the defendant knew or reasonably should have known that the intended victim was a police officer....

NYPL § 125.27(1)(a)(i). Furthermore, New York law defines what it means to attempt a crime: "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." NYPL § 110.00.

Douglas specifically mentions the intent to kill element as not having been established by sufficient evidence. The Second Circuit has explained that to show intent

> the [prosecution] must prove what was in the mind of the accused. Commentators agree that it is seldom possible to present testimonial or direct evidence of an accused's state of mind. Intent as a separate item of proof does not commonly exist.... Thus, whenever intent is an element of a crime, its existence must be inferred by considering the laws that generally govern human conduct. Because intent is formed in the mind in secrecy and silence and the human mind functions at a speed impossible to measure, a determination of whether a deliberate intent was formed must be drawn from all the circumstances of the case. Circumstantial evidence of this subjective fact is therefore indispensable.... Circumstantial evidence is as persuasive as direct evidence. With each, triers of fact must use their experience with people and events to weigh probabilities.

*Mallette v. Scully*, 752 F.2d 26, 32 (2nd Cir.1984); *see Monserrate v. Greiner*, No. 00–CV–4785, 2001 WL 812151, at *11 (S.D.N.Y. July 19, 2001) (citing *Mallette*, 752 F.2d at 32).

The evidence indicates that Douglas fired at Baez and Stefatos at least twice and that one of the bullets was recovered from the van behind which the officers took cover. The officers testified that Douglas assumed what they termed a "combat stance" and used both hands to aim the gun at them when he fired. And, of course, a gun is inherently a deadly weapon. In the face of this evidence, Douglas has failed to show that no reasonable jury could conclude that he intended to kill Baez and Stefatos when he shot at them. In the same vein, the fact that the officers were not hit by the bullets fired by Douglas is of no consequence. *See People v. Fernandez*, 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910, 914 (1996) ("Where [the] elements converge, an attempted murder has occurred regardless of whether the defendant has killed or even injured his or her intended target."). Douglas's

actions clearly constitute "conduct which tends to effect the commission of the crime." NYPL § 110.00; *see People v. Larrabee*, 201 A.D.2d 924, 607 N.Y.S.2d 769, 770 (4th Dep't 1994) (" [T]he test is whether defendant, acting with intent to kill, engaged in conduct tending to effect the commission of murder.... Attempt is established by conduct carrying the project forward within dangerous proximity to the criminal end to be attained." (citations omitted; internal quotations omitted)). That is, Douglas's "combat stance" and use of two hands to aim, his having fired at least twice, and his having shot in the officers' direction such that one bullet was recovered from the van behind which they took cover, taken together, not only satisfy the proximity requirement for attempt expressed in NYPL § 110.00 but also provide a basis from which a reasonable jury could infer intent to kill.

Additionally, Baez and Stefatos were on duty and investigating Usman's report of having been robbed when they approach Douglas in the area of 171st Street and Third Avenue and were fired at. They were uniformed and driving a marked police car. The shooting occurred during daylight hours, and the officers were as close as four feet from Douglas as they approached him. The Court finds that Douglas has failed to show that no rational fact-finder could conclude that Douglas "knew or reasonably should have known that the intended victim[s] [were] police officer[s].... " NYPL § 125.27(1)(a)(i).

Furthermore, Baez, Stefatos, and Armstrong observed the shooting and identified Douglas as the shooter. The Court finds that a reasonable jury could credit these witnesses and conclude that Douglas was the perpetrator.

Because the evidence was sufficient to support beyond a reasonable doubt each element underlying Douglas's attempted murder convictions, his convictions were neither contrary to nor involved an unreasonable application of clearly established federal law. For the reasons discussed above, the Court rejects Douglas's sufficiency claims.

## D. *WEIGHT OF THE EVIDENCE AND ROBBERY*

■ Douglas also claims that the prosecution failed to establish beyond a reasonable doubt that he robbed Usman because his conviction "rested on the testimony of the complaining witness whose opportunity to observe the perpetrator and ability to retain his image were limited, and whose line-up and in-court identifications were suspect and where the circumstantial evidence was problematic." (Petition at 5.) This claim is not properly before the Court.

■ The determination of how much weight to accord eyewitness testimony given that witness' opportunity to observe the events at issue and in light of any circumstantial evidence that corroborates or refutes such testimony is a matter of credibility.[3] "The jury is exclusively responsible for determining a witness' credibility." *Bossett v. Walker*, 41 F.3d 825, 830 (2nd Cir.1994); *United States v. Strauss*, 999 F.2d 692, 696 (2nd Cir.1993); *Robinson v. Mazzuca*, No. 01–CV–00001, 2002 WL 31246535, at *4 (S.D.N.Y. October 7, 2002). "[A] habeas court must defer to the assessments of the weight of the evidence and credibility made by the jury ...." *Frazier*, 187 F.Supp.2d at 109 (citing *Herrera v. Collins*, 506 U.S. 390, 401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). *See Robinson*, 2002 WL 31246535, at *4;

---

**3.** This Court has already rejected Douglas's claim that the lineup was unduly suggestive in· violation of his due process rights in Section II.B *infra.*

*Gutierrez v. Ricks,* No. 02–CV–3780, 2002 WL 31360417, at *6 (S.D.N.Y. October 21, 2002). A federal habeas court cannot address "weight of the evidence" claims be-. cause "a challenge to a verdict based on the weight of the evidence is different. from one based on the sufficiency of the evidence. Specifically, the 'weight of the evidence' argument is a pure state law claim ... whereas a legal sufficiency claim is based on federal due process princi-. ples." *Garbez v. Greiner,* No. 01–CV–9865, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) (citations omitted; internal quotations omitted) (citing *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)); *see Gray v. Meachum,* 101 F.3d 1394 (2nd Cir.2002) (unpublished table decision); *Gutierrez,* 2002 WL 31360417, at *6; *Frazier,* 187 F.Supp.2d at 108. In making a "weight of the evidence" argument, therefore, Douglas does not assert a federal claim as required by 28 U.S.C. § 2254(a). Rather, Douglas raises an error of state law, for which habeas review is not available. *See Garbez v. Greiner,* 2002 WL 1760960, at *8; *Gray,* 101 F.3d 1394; *Gutierrez,* 2002 WL 31360417, at *6; *Frazier,* 187 F.Supp.2d at 108.

 Furthermore, to the extent that Douglas's naked assertion that "the circumstantial evidence was problematic" can be interpreted to raise a sufficiency claim, *see McPherson,* 174 F.3d at 280, the Court concludes that, under the standard of review and principles of due process articulated in Section II.C *infra,* Douglas has failed to show that the evidence was insufficient to support his robbery conviction beyond a reasonable doubt.

New York law defines robbery in the first degree as follows:

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commis-sion of the crime or of immediate flight therefrom, he or another participant in the crime:

1. Causes serious physical injury to any person who is not a participant in the crime; or

2. Is armed with a deadly weapon; or

3. Uses or threatens the immediate use of a dangerous instrument; or

4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime

NYPL § 160.15. Usman testified that at the conclusion of Douglas's cab ride, he observed Douglas push a silver handgun into his shoulder and demand his money, which Usman gave him. This testimony is sufficient to establish Douglas's guilt pursuant to §§ 160.15(2), (3) and (4), namely, that he forcibly stole money from Usman while armed with, threatening to use, and, displaying, respectively, a dangerous instrument. As the Second Circuit has explained, even "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *Edwards v. Jones,* 720 F.2d 751, 755 (2nd Cir.1983); *United States v. Danzey,* 594 F.2d 905, 916 (2nd Cir.), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). Furthermore, the testimony by Baez, Stefatos, and Armstrong that Douglas fired at the officers, as well as forensic evidence associating the bullet fragment

recovered from the van with the silver handgun recovered from Santiago's apartment and indicating that the handgun was operable and had been fired, were sufficient to permit a reasonable jury to find an alternate basis for Douglas's guilt pursuant to subsection (3), namely, that in the course of fleeing the robbery and the pursuing officers, Douglas used a "dangerous instrument."

## III. CONCLUSION AND ORDER

For the reasons discussed above, Douglas's petition for a writ of habeas corpus is denied. As Douglas has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *United States v. Perez*, 129 F.3d 255, 259–60 (2nd Cir.1997); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2nd Cir. 1997). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Accordingly, it is hereby

**ORDERED** that Douglas's petition for a writ of habeas corpus is DENIED.

The Clerk of Court is directed to close this case.

**SO ORDERED**.