Alonzo GARRETT, Petitioner,

v.

Superintendent PERLMAN,
Respondent.

No. 05 Civ. 0442(RWS).

United States District Court,
S.D. New York.

July 19, 2006.

Alonzo Garrett, Marcy, NY, Petitioner Pro se.

Eliot Spitzer by Luke Martland, Michelle Maerov, Assistant Attorneys General, of Counsel, New York City, for Respondent.

## OPINION

SWEET, District Judge.

Alonzo Garrett ("Garrett" or the "Petitioner") has sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

### Prior Proceedings

Garrett filed his petition on January 14, 2005, alleging that he is being held in state custody in violation of his federal constitutional rights. In his petition Garrett claims that "the conviction must be set aside as against the weight of the evidence where the undercover's testimony was riddled with inconsistencies and at times incredible."

The response of the State was filed on April 1, 2005.

### The Facts

On February 1, 2001, Garrett sold crack cocaine to an undercover police detective in exchange for twenty dollars in prerecorded buy money. The pre-recorded buy money was recovered from Garrett minutes after the sale.

By Special Narcotics Indictment Number 0705/01, filed February 7, 2001, the grand jury charged Petitioner with one count each of Criminal Possession of a Controlled Substance in the Third Degree and Criminal Sale of a Controlled Substance in the Third Degree. Garrett pled not guilty on both counts and proceeded to trial before a jury and the Honorable Dora Irizzary on December 13, 2001.

The People presented evidence that in the late afternoon of February 1, 2001, New York Police Department ("NYPD") Detectives Michael Diskin ("Diskin"), Michelle King ("King"), and Isabelle Torres ("Torres"), together with other members of the Manhattan South Narcotics Division, attended a tactical plan meeting to organize buy and bust operations for that day. At the meeting King was assigned to act as an undercover drug buyer, using pre-recorded buy money issued to her by Diskin, the assigned arresting officer. After the meeting, at a little after 5:00 p.m., Diskin and King went to their assigned "target location" at the Port Authority Bus Terminal. At about 5:40 p.m., as Diskin was "walking alone" around the Port Authority, King left the terminal at West 40th Street and Eighth Avenue. (T: 348–51, 463–64, 492–94, 500).[1]

As King left the bus terminal, she saw Garrett leaning against a wall near the corner of West 40th Street and Eighth

---

1. Numerals preceded by "T" refers to the minutes of the trial; those preceded by "S" refer to the minutes of the sentencing.

Avenue outside in the cold. King described Petitioner as a black man, approximately five feet-eight inches tall, with a "medium afro," facial hair, and light brown eyes, wearing a blue "puffy bubble type jacket" over a black sweater and blue jeans. King approached Petitioner and asked whether he had "crack." He replied that he did and asked "how many" King wanted. King asked for "two," and Petitioner explained that he had "dimes," referring to ten-dollar bags of crack cocaine. (T:496–99, 501).

Garrett led King to a subway station staircase located at the northwest corner of West 40th Street and Eighth Avenue. After walking King about half way down the staircase, Petitioner removed two zip lock bags containing crack cocaine from his mouth.[2] He handed the bags to King, who gave him twenty dollars in prerecorded buy money in exchange. After the exchange, Petitioner continued down the staircase into the train station. King walked back up to the street and radioed the direction of Petitioner's flight and his description to the field team. (T:499–502).

After transmitting the information, King went back inside the Port Authority. Less than five minutes later, Petitioner walked up a staircase leading from the subway station to the Port Authority building. King asked him where he had gone, and Petitioner explained that he was afraid that the police were in the area. He then began to walk out of the Port Authority building. (T:503–04, 513–15, 525–26).

King followed Petitioner outside, and walked behind him while transmitting information about his location to the field team over her point-to-point radio. King continued to follow Petitioner from a distance of less than ten feet until she saw

Diskin and other members of the field team take him into custody on the northwest corner of West 40th Street and Eighth Avenue. She then radioed Diskin that Petitioner was the person who had sold her drugs. (T:352–55, 394–95, 504–06).

Diskin conducted a "minimal" search of Petitioner, primarily for weapons. He found no contraband, but recovered ninety-two dollars from Petitioner's pants pocket, including the twenty dollars of prerecorded buy money. Diskin placed Petitioner in the prison van, which was already occupied by four other prisoners. Petitioner's hands were handcuffed behind him, and he sat in the middle of the back row, with another prisoner on each side and two other prisoners in the row in front. When they arrived at the precinct, the prisoners were removed from the van. Torres then searched the van and found a sandwich bag, containing forty-two small plastic bags of crack cocaine on the floor of the second row of the van where Petitioner's feet had been. (T:356–60, 366–67, 476–82).

Petitioner presented no evidence at trial.

On December 18, 2001, the jury returned a verdict of guilty on the charge of Criminal Sale of a Controlled Substance in the Third Degree and acquitted him of the charge of Criminal Possession of a Controlled Substance in the Third Degree. (T:677). On May 13, 2002, Petitioner was sentenced to seven to fourteen years incarceration. (S:12).

In February 2003, Petitioner, through counsel, filed his direct appeal. Petitioner argued that (1) his conviction was against the weight of the evidence and (2) the sentence was excessive. In response, the

2. NYPD chemist Simona Nadelson tested the bags' contents and determined that they contained cocaine. (T:506–08, 547–50).

People argued that (1) Petitioner's guilt was proven beyond a reasonable doubt and the jury's verdict was in accord with the weight of the evidence, and (2) his sentence was fair and appropriate.

On October 14, 2003, the Appellate Division, First Department, unanimously affirmed Petitioner's conviction. *People v. Garrett*, 309 A.D.2d 592, 765 N.Y.S.2d 356 (N.Y.App.Div.2003). The court held that the verdict was not against the weight of the evidence. "Issues of credibility, including the weight to be given to inconsistencies in testimony, were properly considered by the jury and there is no basis for disturbing its determinations." *Id.* at 357. Specifically, the Appellate Division held that it did "not find the police account of the transaction to be implausible." *Id.* The Appellate Division reduced Petitioner's sentence, "as a matter of discretion in the interests of justice," to five to ten years' incarceration. *Id.*

On October 16, 2003, Petitioner sought leave to appeal to the Court of Appeals. Petitioner's leave application merely asked the Court of Appeals to consider arguments raised in Petitioner's Appellate Division brief. On December 8, 2003, the Court of Appeals denied Petitioner leave to appeal. *See People v. Garrett*, 1 N.Y.3d 572, 775 N.Y.S.2d 789, 807 N.E.2d 902 (2003).

### The Petition Is Not Cognizable On Habeas Review And Without Merit

■ Petitioner's claim that his conviction was against the weight of the evidence is not a basis for habeas relief. Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is "an error

of state law, for which habeas review is not available." *Douglas v. Portuondo*, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002). "A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)" which empowers New York State intermediate appellate court to make weight of the evidence determinations.[3] *Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001). In making a "weight of the evidence" argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law, for which habeas review is not available. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (habeas corpus review not available to remedy alleged error of state law).

■ Petitioner's specific argument in support of this claim, that King's testimony was "incredible," is likewise not reviewable in habeas proceedings since credibility determinations are the province of the jury. "[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996); *see also Douglas*, 232 F.Supp.2d at 115 ("The determination of how much weight to accord eyewitness testimony given that witness' opportunity to observe the events at issue and in light of any circumstantial evidence that corroborates or refutes such testimony is a matter of credibility"). Since "a habeas court must defer to the assessments of the weight of the evidence and credibility of the witnesses that were made by the jury," *Frazier v. New York*, 187 F.Supp.2d 102, 109–10 (S.D.N.Y.2002), Pe-

---

**3.** New York Criminal Procedure Law § 470.15(5) provides that "[t]he kinds of determinations of reversal or modification deemed to be on the facts include, but are not

limited to, a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."

titioner has failed to articulate a basis for habeas relief and the petition is denied.

■ Even if the petition is construed to allege that the evidence was insufficient, Garrett still would not be entitled to habeas relief. Petitioner can only obtain habeas corpus relief by showing that the Appellate Division's decision that his conviction was based on sufficient evidence was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). With respect to the "contrary to" clause, the writ may issue in two circumstances: first, if the state court decision is contrary to Supreme Court precedent on a question of law; and, second, if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result opposite to that reached by the Court. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of the Supreme Court precedent when the state court either "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495.

■ A challenge to the sufficiency of the evidence must be rejected if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When considering the sufficiency of the evidence of a state conviction "[a] federal court must look to state law to determine the elements of the crime." *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999)). In this case, a jury found Petitioner guilty of Criminal Sale of a Controlled Substance in the Third Degree, based upon evidence of his sale of crack cocaine to an undercover detective. To establish Petitioner's guilt, the People were required to prove that Petitioner knowingly sold a narcotic drug. *See* Penal Law § 220.39(1).

Evidence presented at trial included the following details. King, an experienced undercover officer, asked Petitioner, who was standing outside on a cold day, whether he was selling crack cocaine. He told her that he was selling "dimes," which King took to mean ten-dollar bags. She gave him twenty dollars in pre-recorded buy money, and he gave her two bags of crack cocaine. Within five minutes of the sale, King and Petitioner ran into each other again inside the Port Authority bus terminal. King asked Petitioner where he had gone, and Petitioner told her that he had walked away from her because he was concerned that there were police around. King then proceeded to follow Petitioner, and he was still within her sight when, five minutes later, he was apprehended by the field team. He was carrying the twenty dollars in pre-recorded money.

Petitioner's habeas petition consists of a single sentence. His assertion that King's testimony was not credible, even construed liberally, cannot support a conclusion that the Appellate Division's affirmance was contrary to or an unreasonable application of federal law. The trial evidence led the jury to the conclusion that Petitioner sold crack cocaine to King. Petitioner's weight of the evidence claim and credibility challenge are not appropriate for habeas review. Further, since there was sufficient

evidence to support Petitioner's conviction, this claim is without merit.

### Conclusion

For the reasons set forth above, the petition is denied. As Petitioner has not made a substantial showing of the denial of a Constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also, United States v. Perez,* 129 F.3d 255 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), it also is hereby certified that any appeal from this order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

It is so ordered.