Judge CALABRESI concurs in a separate opinion.
PER CURIAM:
Petitioner-appellant Rudolph Hawthorne appeals from a December 9, 2010 judgment of the United States District Court for the Eastern District of New York (Nina Gershon, Judge) denying his petition for a writ of habeas corpus. Because the Appellate Division of the New York State Supreme Court, Second Department, issued a reasonable decision on the merits of petitioner’s claim, to which we are required to defer, we affirm the judgment of the District Court.
This appeal arises out of a petition for a writ of habeas corpus filed by Rudolph Hawthorne, who at the time was proceeding pro se.[2] Hawthorne is incarcerated pursuant to a state court judgment convicting him, after a jury trial, of criminal possession of a weapon and assault on one Milton Tennessee.[3] The facts elicited at trial demonstrated that, on or about October 31, 2000, Tennessee and another man, Kelvin Armstead, were attacked by a man wielding a hammer. Armstead, who sustained approximately ten blows, died of his wounds; Tennessee, who sustained only one to two blows and survived the attack with severe brain damage, is paralyzed on his right side and unable to speak.
On November 2, 2000, the day after the crime was discovered, Hawthorne was briefly interviewed in connection with the attack by Detective Edgecombe, the lead investigator on the case. The interview took place at the local police precinct, but Hawthorne was not placed in custody. On November 13, he voluntarily returned to the precinct at approximately 1:45 p.m. to conduct a supplemental interview. After several hours of interrogation, Hawthorne confessed to another investigator, Detective Bardin, that he had committed the attacks on Tennessee and Armstead.
Although Hawthorne had not been read his Miranda[4] rights earlier in the interview, Bardin testified that, immediately after Hawthorne began to implicate himself in the crime, Bardin stopped the interview and read Hawthorne his Miranda rights. Hawthorne signed a waiver of his Miranda rights at 8:45 p.m. on November 13, 2000, and thereafter dictated a written confession to Detective Bardin.[5] The confession, signed by Hawthorne at 9:45 p.m. that night, was the only evidence connecting Hawthorne to the crime.
After exhausting his state court appeals, Hawthorne filed his petition for a writ of habeas corpus on September 27, 2007, alleging that his confession was the result of a violation of his Miranda rights; that his counsel was ineffective at a suppression hearing regarding that confession; and *195 that the prosecutor in his case had engaged in misconduct. The petition was referred to Magistrate Judge Cheryl L. Poliak, who on July 22, 2009, in a thorough and detailed Report and Recommendation (the “Report”), recommended denial of the petition in full. As relevant here, the Report held that petitioner’s Miranda claim had not been exhausted in the state courts and that, because petitioner had already taken his permitted direct state appeal, the claim was also procedurally defaulted. Hawthorne v. Spitzer, No. 07-cv-4128, 2009 WL 6895978, at *23-24 (E.D.N.Y. July 22, 2009).
On September 19, 2010, Judge Gershon adopted the Report in its entirety and denied the petition for habeas corpus. In pertinent part, she held that petitioner had not established that his counsel had rendered ineffective assistance at a pre-trial suppression hearing conducted pursuant to People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) (the “Huntley hearing,” or the “hearing”).[6] Hawthorne v. Spitzer, No. 07-cv-4128, 2010 WL 3803861, at *2 (E.D.N.Y. Sept. 21, 2010). Judgment was entered on December 9, 2010.
We granted a Certificate of Appealability on July 5, 2011 on the following issues: (1) whether petitioner had established prejudice for the procedural default of his claim that his Miranda rights were violated; and (2) whether petitioner received ineffective assistance of counsel during the Huntley hearing, where (i) counsel failed to cross-examine either of the detectives who interrogated petitioner on the day he confessed to the crime, and (ii) counsel allegedly refused to permit petitioner to testify on his own behalf.[7]
DISCUSSION
We review a district court’s denial of a writ of habeas corpus de novo, and review any factual findings for clear error. Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir.2009). As a result of our de novo review, we affirm the judgment of the District Court.
A. Ineffective Assistance of Counsel
Petitioner argues that he was deprived of the effective assistance of counsel when his Huntley counsel failed to cross-examine either Detective Edgecombe or Detective Bardin, the two detectives who (among others) interrogated him on November 13, 2000. In order to determine whether a federal habeas petitioner was deprived of the effective assistance of counsel, courts follow the rule set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
A convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant *196 makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687,104 S.Ct. 2052.
The petitioner argued in the Appellate Division of the New York State Supreme Court that he had been prejudiced by Huntley counsel’s failure to examine the detectives.[8] Br. of Appellant at 39, People v. Hawthorne, 35 A.D.3d 499, 826 N.Y.S.2d 147 (2d Dep’t 2006) (No. 03-5646), leave to appeal denied, 8 N.Y.3d 946, 836 N.Y.S.2d 557, 868 N.E.2d 240 (2007). The Appellate Division, while vacating another of petitioner’s convictions, summarily denied relief on his ineffective assistance of counsel claim. Hawthorne, 35 A.D.3d at 502, 826 N.Y.S.2d 147 (holding that “[t]he defendant’s remaining contentions are without merit”).
We are required to defer to a state court’s adjudication of an issue on the merits, unless the state court’s decision is “contrary to, or involve[s] an unreasonable application of, clearly established Federal law ... [or is] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). “For the purposes of AEDPA deference, a state court ‘adjudicate^]’ a state prisoner’s ... claim on the merits when it (1) disposes of the claim ‘on the merits,’ and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer ... to the state court’s decision.” Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir.2001)) (quoting 28 U.S.C. § 2254(d)(1)) (alteration in the original). A summary disposition constitutes a disposition “on the merits.” Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011).
AEDPA unquestionably requires deference to a state court’s “summary disposition” of an appeal. See id. at 784. (“Where a state court’s decision is unaccompanied by an explanation, the habeas petitioner’s burden still must be met by showing there was no reasonable basis for the state court to deny relief.”). Where, as here, a state appellate court decides an issue of federal law in a summary fashion, see Hawthorne, 35 A.D.3d at 502, 826 N.Y.S.2d 147, we exercise AEDPA deference by asking, first, “what arguments or theories ... could have supported” the decision of the state court, and second, “whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.” Harrington, 131 S.Ct. at 786. As explained below, the decision of the Appellate Division merits such deference.
The evidence presented at trial was available to the Appellate Division when it determined petitioner’s Strickland claim. Although petitioner’s Huntley counsel did not cross-examine either detective at the Huntley hearing regarding the voluntariness of petitioner’s confession, trial counsel conducted a thorough cross-examination of both detectives before the jury. Detective Edgecombe testified, on cross-examination, that neither he nor any other detec *197 tive had threatened or otherwise coerced petitioner during the first several hours of interrogation. Detective Bardin testified similarly on direct and cross-examination. It would not be an unreasonable application of clearly established federal law for the Appellate Division to have determined that the evidence elicited by the defendant at trial would likewise have been elicited by competent counsel at the Huntley hearing, and that that evidence did not merit suppression of the confession.[9]
We determine that the decision of the Appellate Division was not “contrary to,” nor did it involve “an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.” 28 U.S.C. § 2254(d)(1). Although we might not have decided the issue in the way that the Appellate Division did, see Cavazos v. Smith, — U.S.—, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) — and indeed we are troubled by the outcome we are constrained to reach — we cannot say that it would be “[imjpossible” for the proverbial “fairminded jurist[]” to conclude that no prejudice occurred, see Richter, 131 S.Ct. at 786. We therefore must defer to the determination made by the state court, and hold that petitioner was not prejudiced by Huntley counsel’s alleged ineffectiveness. See Sellan, 261 F.3d at 312.[10]
B. Defaulted Miranda Claim
Petitioner argues that his Miranda rights were violated by the detectives who interrogated him on November 13, 2000, and that his confession should therefore have been suppressed. This claim was evidently not raised to the state courts on direct appeal,[11] and is therefore both unexhausted and procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 750, *198 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Petitioner accordingly must “demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law” in order for us to review the defaulted claim. Id. Because our Certifícate of Appealability specifically referred to the prejudice prong of Coleman, we limit our review to petitioner’s claim that he was prejudiced by the alleged violation of his Miranda rights. See Valverde v. Stinson, 224 F.3d 129, 136 (2d Cir.2000) (noting that the Court of Appeals should address only claims included in certificate of appealability).
A finding that a defendant’s Miranda rights were violated prior to his confession is not sufficient, in and of itself, to establish that the admission of a later, “Mirandized,” confession prejudiced the defendant. As the Supreme Court has held, although “Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.” Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).
It is indisputable that both petitioner’s written and videotaped statements were made after he had heard, and waived, his Miranda rights: while the written Miranda waiver was signed at 8:45 p.m., the written statement was not signed until 9:45 p.m., and the videotaped statement was made at some point later that night or early the next morning. Accordingly, the only remaining question is whether petitioner’s inculpatory statements made after he signed the Miranda waiver were “knowingly and voluntarily made.” Id.
Petitioner’s Miranda claim can be resolved by reference to our holding on his primary claim — that his Huntley counsel was not prejudicially ineffective by failing to demonstrate at the Huntley hearing that the confessions were involuntary.[12] As discussed above, New York’s appellate courts have already determined, on direct review of the conviction, that the trial court’s finding that the confessions were voluntary did not violate the Constitution. Absent a misapplication of clearly established Supreme Court precedent, we may not disturb their determination of this matter. Accordingly, we hold that petitioner cannot show that the alleged violation of Miranda rendered his written and videotaped confessions inadmissible.
Because petitioner cannot show that he was prejudiced by the alleged Miranda violation, we affirm the District Court’s holding that the Miranda claim- is procedurally barred.[13]
CONCLUSION
We have carefully reviewed the record and determine that petitioner’s claims are *199 meritless. Accordingly, for the reasons stated above, we AFFIRM the judgment of the District Court.

. Hawthorne was unrepresented during the District Court proceedings. On July 6, 2011, we appointed appellate counsel pursuant to the Criminal Justice Act. We thank appointed counsel for her service in this case.

. Hawthorne was also convicted at trial of murder in the second degree. That conviction was reversed by the Appellate Division of the New York State Supreme Court for reasons unrelated to this appeal. See People v. Hawthorne, 35 A.D.3d 499, 826 N.Y.S.2d 147 (2d Dep't 2006).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Later that night or early the next morning, Hawthorne repeated his confession on video tape at the behest of the assigned Assistant District Attorney.

. Petitioner retained new counsel at some point after the Huntley hearing and before the trial. We therefore refer to the attorney who represented petitioner at the hearing as “Huntley counsel.”

. We declined to grant a Certificate of Appeal-ability based upon petitioner’s prosecutorial misconduct allegations.

. The heading for Point Two of Hawthorne’s brief to the Appellate Division read as follows: "Appellant was denied the effective assistance of counsel when, at a Huntley hearing, defense counsel failed to make any argument, cross-examine the interrogating detective, call appellant to the stand, or try to elicit any testimony or facts whatsoever in support of his claim that appellant's statements, which were the only evidence linking him to the killing, were involuntary, coerced and obtained in violation of his right to counsel." Br. of Appellant at 39, People v. Hawthorne, 35 A.D.3d 499, 826 N.Y.S.2d 147 (2d Dep’t 2006) (No. 03-5646).

. In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court held that a defendant who challenges the admission of a pre-trial confession on voluntariness grounds must receive a full and fair hearing before the trial judge (a "Jackson hearing”), outside the presence of the jury, on the issue of voluntariness. Id. at 377, 84 S.Ct. 1774. The trial court properly conducted a Jackson hearing and determined that petitioner's confession was not involuntarily made. Petitioner does not, and could not, argue that the Jackson hearing did not occur. Instead, he argues that his counsel was constitutionally ineffective (or effectively absent) during the course of that hearing. Accordingly, the only issue on appeal is petitioner's claim, brought under the Sixth Amendment, that his counsel was ineffective at the suppression hearing. We therefore cannot grant relief absent a showing of prejudice a showing which is precluded by the decision of the Appellate Division. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

. Petitioner appears to claim that Huntley counsel’s alleged refusal to allow him to testify at the hearing constituted so-called "structural error,” and was therefore inherently prejudicial. See, e.g.,1 Puckett v. United States, 556 U.S. 129, 140-41, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009); Gibbons v. Savage, 555 F.3d 112, 119 (2d Cir.2009) ("[Sjtructural errors are those to which the harmless error analysis does not apply, as they are deemed to render a criminal trial fundamentally unfair.”).
Although the Supreme Court has stated that a defendant has the absolute right to testify at trial, and that trial counsel’s refusal to permit the defendant to testify at trial may constitute constitutional error, Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Supreme Court has never explicitly extended that absolute right to pre-trial hearings. Accordingly, even if trial counsel did prevent Hawthorne from testifying at the Huntley hearing, the state court's determination that trial counsel’s actions did not constitute ineffective assistance of counsel would not constitute a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

.Petitioner did not petition for state collateral review of his conviction.

. Although a "Mirandized” confession that closely follows an un-Mirandized confession may itself be constitutionally suspect, see Missouri v. Seibert, 542 U.S. 600, 621, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (Kennedy, J., concurring); United States v. Moore, 670 F.3d 222, 227-29 (2d Cir.2012), petitioner does not argue that the evidence shows that the written or videotaped confessions came as a result of a "deliberate two-step interrogation technique,” Moore, 670 F.3d at 227; see also United States v. Williams, 681 F.3d 35, 40-41 (2d Cir.2012).

. Petitioner argues that his Miranda claim was in fact presented to the state court when, in his brief to the Appellate Division, he argued that "there is a reasonable likelihood that counsel would have succeeded in proving a violation of his Miranda rights.” Assuming, arguendo, that that argument was sufficient to present the issue to the Appellate Division, we would deny habeas relief because the state court would have decided the Miranda claim on its merits. See Part A, ante.